JOHNSON–BRINKMAN COMMISSION COMPANY v. CENTRAL BANK OF KANSAS CITY, *Appellant.*

Division Two, June 13, 1893.

1. **Practice:** VARIANCE. Suit cannot be brought for one cause of action and recovery be had on another.

2. ———: TROVER AND CONVERSION. Nor can trover and conversion be maintained where the plaintiff has neither the right of property nor the right of possession, in the property charged to have been converted.

3. ———: CIVIL ACTION. Under the Missouri Code practice, there is but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs and it is denominated a civil action.

4. **Pleading:** MONEY HAD AND RECEIVED: ESTOPPEL. A petition which charges that defendant in disregard of plaintiff's rights took certain wheat and converted it to its own use and has the proceeds in its possession or under its control equal to the value of said wheat, and that plaintiff has demanded the value of said wheat, is sufficient to support a verdict for money had and received especially where the case was tried by both parties on such theory.

5. ———: ———: ———. A party cannot be heard to complain of an error which he invites or adopts.

6. **Sale:** CHECK: PAYMENT. A bank check given on the purchase of a chattel does not constitute payment until the money is actually received by the vendor unless it is otherwise expressly agreed.

7. ———: PAYMENT: WAIVER. Where on cash sale the vendee fails to pay the purchase money, the vendor may avoid the sale although the property is in the hands of the vendee or of a purchaser from the latter, provided there has been no waiver of the payment of such purchase price.

8. ———: ———: WORTHLESS CHECK: LACHES. Although the giving of a worthless check by the purchaser of a chattel is not payment and does not operate to pass the title where the terms of sale are cash on delivery, yet the delivery of a bill of lading, negotiable under Revised Statutes 1889, sec. 745, by the vendor to the purchaser, is such laches on the part of the vendor as will estop him from claiming the property or its proceeds from an innocent sub-vendee of the purchaser, without notice of the terms of the sale.

9. ———: ———: ———: ———. No estoppel will, however, arise if the second purchaser had actual notice of the terms of sale and of the non-payment of the purchase money.

10. **Estoppel:** ELECTION: ATTACHMENT. The bringing of an attachment suit is not such an election of remedies as will preclude the plaintiff from dismissing his suit and pursuing a different remedy.

11. ———: ———: ———. Where a worthless check is given for chattels sold for cash on delivery, the vendor by bringing an attachment suit against the vendee to recover the purchase price does not estop himself from maintaining another suit for the conversion of the property, where the attachment suit was dismissed before judgment.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Hayward & Griffin* for appellants.

(1). The admission of incompetent, irrelevant and immaterial evidence at the trial ought to operate a reversal.. (2) Plaintiff parted with the property in and the right of possession to the wheat by the delivery to the Imboden Commission Co. *First.* With the property: The vendor's intention governs and is shown to have been to pass the property—*(a)* By the delivery of the bill of lading. *Cunningham v. Ashbrook,* 20 Mo. 553; *Williams v. Evans,* 39 Mo. 207; *Upton v. Cotton Mills,* 111 Mass. 446; *Freeman v. Nichols,* 116 Mass. 309; *Carleton v. Sumner,* 4 Pick. 516; *Farlaw v. Ellis,* 15 Gray 229; *Scudder v. Bradbury,* 106 Mass. 422; *Goodwin v. Railroad,* 111 Mass. 487; *Hammett v. Linneenan,* 48 N. Y. 399; Benjamin on Sales [Bennett's Notes, 1881], 268; *Wigton v. Bowley,* 130 Mass. 252. *(b)* By plaintiff's knowledge that Imboden bought to sell again. *Smith v. Dennie,* 6 Pick. 262; *Burbank v. Crookers,* 7 Gray 158; *Haskins v. Warren,* 115 Mass. 514. *(c)* By bringing an action for the price. Benjamin on Sales [Bennett's Notes, 1881], p. 366, sec. 433; *Cahn v. Reed,* 18 Mo. App. 115, 126. *(d)* By accepting the transfer of the office furniture. See, on the general proposition: *Ober v. Carson's Ex'rs,* 62 Mo. 209; *Press Co. v. Stanard,* 44 Mo. 71. *Second.* This was not a conditional delivery. If it were, the statute prohibits a recovery. Revised Statutes 1889, secs. 5178, 5180; *Machine Works v. Trisler,* 21 Mo. App. 69; *Tufts v. Thompson,* 22 Mo. App. 564; *State to use v. Brew. Co.,* 32 Mo. App. 276; *Coover v. Johnson,* 86 Mo. 533;

*Collins v. Wilhoit*, 35 Mo. App. 585; *Worley v. Watson*, 22 Mo. App. 546; *Knoop v. Distilling Co.*, 26 Mo. App. 303; *Van Raalte v. Harrington*, 101 Mo. 602. (3) The right of possession was terminated by delivery to Albers. *Sigerson v. Kahmann*, 39 Mo. 206. (4) Defendant did not convert the wheat. 3 Roberts on Practice, 462; *Nanson v. Jacobs*, 93 Mo. 331; *Walsh v. Sichler*, 20 Mo. App. 374. Neither *first*, by a tortious taking,—nor *second*, by any act of dominion. *Newhall v. Kingsbury*, 131 Mass. 445; *Dusky v. Rudder*, 80 Mo. 400; *Nanson v. Jacobs*, 93 Mo. 331; Cooley on Torts, 456; *Rembaugh v. Phipps*, 75 Mo. 422; *Smith v. Ball*, 9 Mo. 873; *Loring v. Mulcahy*, 3 Allen, 575; *Leonard v. Tidd*, 3 Met. 5; *Matteawan Co. v. Bentley*, 13 Barb. (N. Y.) 641; *Crocker v. Gallifer*, 44 Mo. 491; *Petit v. Boujio*, 1 Mo. 64, nor *third*, by the demand and refusal. *Munger v. Hess*, 28 Barb. (N. Y.) 75; *Hill v. Belasco*, 17 Ill. App. 194; *Fillmore v. Hubbard*, 31 How. (N. Y.) 424; *Kelsey v. Griswold*, 6 Barb. (N. Y.) 436; *Davis v. Buffum*, 51 Me. 160; *Yale v. Saunders*, 16 Vt. 243; *Boobier v. Boobier*, 39 Me. 406; *Wards v. Moffatt*, 38 Mo. App. 395. (5) The bringing of the attachment suit against the Imboden Commission Co. was an affirmance of the sale. *Bach v. Tach* (N. Y.), 26 N. E. Rep. 1019. (6) The suit, as an equitable one, must fail in the light of the evidence.

*Lathrop, Morrow & Fox* for respondent.

(1) The petition is sufficient, whether the action be called conversion, or money had and received. It alleges that defendant received certain money to which plaintiff was entitled, and refused on demand to pay it over. Maxwell on Code Pleading, p. 247; *Railroad v. McLinery*, 32 Mo. App. 166; *Jacoby v. O'Hearn*, 32

Mo. App. 566. (2) If defendant desired to object to the union of two causes of action in the same count, it should have filed a demurrer or a motion to require plaintiff to elect. Having omitted to do so, it is now too late to complain. (3) Whatever the issues may have been, as defined by the pleadings, the issues tried and submitted to the jury, upon the instruction of the defendant, asked by it and given by the court, were broad enough to cover a cause of action for money had and received. This being so, defendant cannot now insist that the issues made by the pleadings are too narrow to sustain the judgment. *Hilz v. Railroad*, 101 Mo. 42; *Bettes v. Magoon*, 85 Mo. 580; *Thrope v. Railroad*, 89 Mo. 650; *Loomis v. Railroad*, 17 Mo. App. 340. (4) Treating the case as an action for money had and received by defendant, for the plaintiff's use, the legal propositions raised by appellant have no application. (5) The terms of the sale being cash on delivery, and no cash being paid, no title passed to the Imboden Company, and the latter could convey no title to any sub-vendee. *Railroad v. Irwin* (Ind.), 9 American and English Railway Cases, 252; *Bank v. Railroad*, 46 N. W. Rep. (Minn.) 342; *Freight Co. v. Stanard*, 44 Mo. 71; *Decan v. Shipper*, 35 Pa. St. 239; *Levan v. Smith*, 1 Denio 573; *Dows v. Perine*, 16 N. Y. 325; *State v. Brewing Co.*, 32 Mo. App. 276; Benjamin on Sales, p. 569, secs. 335–363; *Hodgson v. Barrett*, 33 Ohio St. 63. (6) The institution of the attachment suit, in ignorance of the facts necessary to a choice of remedies, was no bar to this action. *Anchor Milling Co. v. Walsh*, 20 Mo. App. 107; *Lapp v. Ryan*, 23 Mo. App. 436; *Butler v. Hildreth*, 5 Met. 49; *Bunch v. Grave*, 12 N. E. Rep. 517; 6 American and English Encyclopedia of Law, p. 254; *Anderson's Appeal*, 36 Pa. St. 476; *Payton v. Bowen*, 14 R. I. 375; *Sopworth v. Munghen*, 30 Beav. 235; 1 Bigelow on Fraud, p. 435. (7) Where

goods are sold for cash on delivery and the vendor obtains possession by giving a check, which is dishonored, the contract for a sale becomes void, and no subsequent suit by attachment can operate to transfer the title to the vendee. *Freight Co. v. Stanard*, 44 Mo. 71; Bishop on Contracts, sec. 846. (8) Giving to the doctrine of election between inconsistent remedies, all that appellant claims for it, the judgment below is still for the right party, for the reason that the evidence is undisputed, that plaintiff, before the bringing of the attachment suit, had elected to pursue the grain as its own, and had refused to waive its right to prepayment.

BURGESS, J.—This is an action to recover the proceeds or value of six car loads of wheat. Prior to August 30, 1890, the Imboden Commission Company, a corporation engaged in the grain business, contracted to buy of the plaintiff in this action, also a corporation engaged in the grain business, six car loads of wheat. On that day, Saturday, August 30, 1890, the plaintiff delivered to the Imboden Commission Company, the six cars of wheat in controversy, by delivering to them the original bill of lading, the inspector's certificate, elevator receipts, etc., and receiving in return the check of the Imboden Commission Company on defendant bank for $3,719.37, being the price agreed upon. The Imboden Commission Company went to the Missouri Pacific Railway Co., and surrendered the Johnson–Brinkman bill of lading, receiving in exchange therefor a bill in their own names, consigning the grain to their order in St. Louis, and marked: "Notify C. H. Albers & Co.," to whom they had sold it. They drew a draft on Albers & Co. for $3,743.19, which amount represented the price of the grain agreed on with Johnson–Brinkman Commission Company, and certain

commissions and charges for exchange. This draft was attached to the Imboden bill of lading, and, together with the usual receipts and certificates, was deposited with the defendant bank, being at once carried to the credit of the Imboden Commission Company. The purpose of the deposit, was for the bank to forward the draft, etc., to St. Louis and collect the proceeds of Albers & Co.

On the same day, August 30, the bank sent the draft and bill of lading to its correspondent in St. Louis, to whom, on Monday, September 1, during banking hours, the amount thereof was paid by Albers & Co. The plaintiff deposited the check which Imboden Commission Company had given it for the wheat to their account at the Midland National Bank on the afternoon of Saturday, and on Monday, September 1, it passed through the clearing house and was presented to defendant bank for payment, and payment was refused. On the afternoon of Monday, September 1, apparently after banking hours, Imboden, president of the Imboden Commission Company, which had drawn the check, and Mr. A. D. Johnson, president of the plaintiff corporation, called on Mr. Thayer, cashier of the Central bank, and demanded the wheat back, or the money for the wheat. Thayer claiming on the part of the bank, that he had no funds applicable to such payment, refused the request; saying, however, that if it should turn out Imboden had anything he would turn it over.

Afterwards and on the same day, Imboden turned over to Johnson all the property, apparently, that the Imboden Commission Company owned, consisting of some office furniture, etc., and Mr. Johnson, for the plaintiff, put up a notice on the door of the office of the Imboden Commission Company that plaintiff was in possession. Whether a bill of sale was executed or

not is not agreed by Johnson and Imboden, but there is no question that Imboden intended to pass the title of said property, and that Johnson, for the plaintiff, intended to receive it. It is, however, said both by Imboden and Johnson that this property was not intended as a payment on account of the purchase price of the wheat, but only as a slight contribution on the part of Imboden towards the expenses of the litigation that both supposed to be impending.

On the same day, September 1st, Johnson-Brinkman Company sued out a writ of attachment against the Imboden Commission Company, and on the writ garnished the Missouri Pacific Railway Company, but the wheat in controversy had then been shipped from Kansas City and was not seized under the writ of attachment. The attachment suit was pending in the circuit court until September 24th, when it was dismissed and the present action instituted.

The terms of the sale from Johnson-Brinkman Company to the Imboden Commission Company were cash on delivery, and it was contended, on this part of the case by the plaintiff, that a check which was subsequently dishonored was in no sense payment; and that the terms of the sale not having been carried out, the property in the wheat, or at least the right to possession of the wheat, had never passed either to the Imboden Commission Company or anyone else. The bank, on the other hand, claimed that in dealing with the wheat they had acted merely as agents of the Imboden Commission Company, exercising no act of dominion over the wheat; that they had forwarded the bill and draft to St. Louis, in the ordinary course of business, as expressly instructed by the Imboden Commission Company to do, and had demanded and received payment of the draft from the consignee designated, crediting the Imboden Commission Com-

pany with the proceeds of said payment; and that when, on the afternoon of September 1, 1890, the check to Johnson-Brinkman was presented for payment, the state of the Imboden Commission Company's account justified them in refusing to pay it. On Saturday, August 30th, the account of the Imboden Commission Company was overdrawn $8,041.80. Certain checks were paid on that day; and on the first of September, when the Johnson-Brinkman Commission Company presented their check, the overdraft amounted to $8,250.20, after crediting the amount of the Albers draft, and debiting the aggregate amount of checks paid that day, amounting to $3,689.05. When the check to the Johnson-Brinkman Commission Company was presented, therefore, there were no funds to meet it.

As objection is taken by defendant to the petition—leaving out the formal part—it is copied in full and is as follows:

"Plaintiff, for cause of action against defendant, states that plaintiff and defendant are and were at all the times hereinafter mentioned corporations duly created and existing under and by virtue and authority of the laws of the state of Missouri; that on the thirtieth day of August, 1890, plaintiff was the owner and was entitled to the possession of 4017 20-60 bushels number 2 hard wheat, contained in cars as follows, to-wit: Car number 5021, Missouri Pacific, 629 bushels; car number 7308, Missouri Pacific, 623 20-60 bushels; car number 8225, Missouri Pacific, 588 20-60 bushels; car number 9222, I. M., 700 bushels; car number 119, H. C. A. & G., 800 bushels; and car number 12475, Missouri Pacific, 666 40-60 bushels; of a total value of three thousand seven hundred and nineteen and 37-100 dollars ($3,719.37); that defendant on said thirtieth day of August, 1890, willfully and wrongfully, in utter disregard of plaintiff's rights, took all of

said wheat and converted the same to its own use, and has disposed of same and now has the proceeds thereof in its possession and under its control; that said defendant converted said grain to its own use, with full notice and knowledge of plaintiff's ownership and right to the possession thereof; that plaintiff demanded from defendant the return of said wheat, and since the disposal of said wheat by defendant, plaintiff has demanded from defendant the value of said wheat; that the proceeds of said wheat now in the possession and under the control of defendant as aforesaid is equal to the value of said wheat hereinbefore set out and mentioned, and that plaintiff is damaged in said amount by said conversion.

"Wherefore, plaintiff asks judgment against defendant for said sum of $3,719.37 and interest thereon at six per cent. per annum, and for all costs in this matter incurred and expended."

The answer of defendant is a general denial. There was a verdict and judgment for plaintiff. A motion for a new trial, and also in arrest were filed by defendant, which being overruled, the case is here by appeal.

The law is well settled that an action cannot be brought on one cause of action and a recovery had on another. *Clements v. Yeates*, 69 Mo. 623; *Sandeen v. Railroad*, 79 Mo. 278; *Finlay v. Bryson*, 84 Mo. 664; *Jones v. Loomis*, 19 Mo. App. 234. Nor can trover and conversion be maintained where the plaintiff has neither the right of property in, nor the right of possession to the chattels alleged to have been converted. *Parker v. Rodes*, 79 Mo. 88; *Myers v. Hale*, 17 Mo. App. 204. But where money is received by one to which another is legally entitled, the latter may recover it in an action for money had and received. Under the Missouri code we have but one form of action for the enforcement or

protection of private rights, and redress or prevention of private wrongs, which is denominated a civil action. Revised Statutes, 1889, sec. 1989. If, then, the petition in this case states a good cause of action for money had and received, and the facts upon which it is predicated warrant it, the objection that it should have been a proceeding in equity is untenable, although it may contain other allegations that are redundant and immaterial, and which might have been stricken out on motion.

The petition avers that defendant "in disregard of plaintiff's rights, took all of said wheat and converted the same to its own use, and now has the proceeds thereof in its possession and under its control and plaintiff has demanded from the defendant the value of said wheat; that the proceeds of said wheat now in the possession and under the control of defendant are equal to the value of," etc. If the wheat belonged to plaintiff at the time it was received by Albers & Company in St. Louis, and the latter afterwards sent this draft to defendant in payment therefor, and if at the time of the receipt thereof defendant knew that the wheat was the property of plaintiff at the time of the sale to Albers & Company, or that the sale of the wheat by plaintiffs to the Imboden Commission Company was a cash sale and that the wheat had not been paid for by Imboden Commission Company, then the proceeds of the wheat was the property of plaintiff, and it may maintain its action against defendant as for money had and received to its use and benefit. *Railroad v. McLiney*, 32 Mo. App. 166; *Cary v. Curtis*, 3 How. (U. S.) 236; *Kreutz v. Livingston*, 15 Cal. 344; *Tutt v. Ide*, 3 Blatch. 249; *Bullard v. Hascall*, 25 Mich. 132; 4 Wait's Actions and Defenses, 469, and authorities cited.

Nor is it essential that any privity of contract should be shown; if plaintiff's right to the money is

established and the defendant is shown to have received it under circumstances that he ought not to retain it, the law implies a promise to pay it to the party who ought to have it. *Calais v. Whidden*, 64 Me. 249; *Mason v. Waite*, 17 Mass. 563; *Bank v. Smith*, 5 Conn. 71; *Colgrove v. Fillmore*, 1 Aik. (Vt.) 347.

And so it has been held that where money has been received from the wrongful sale of personal property of another, the latter may waive the wrong and recover the amount received. *Tamm v. Kellogg*, 49 Mo. 118, and authorities cited. Such seems to be the theory upon which the case was tried by both parties, as is manifest from the instructions given in the case, especially as the seventh and eighth given on behalf of the defendant, present this question squarely to the jury. Even if the plaintiff by its instructions placed its right of recovery upon a different ground from that stated in the petition, still the defendant will not be heard to complain where it committed a like error by submitting the converse of the theory hypothecated in plaintiff's instructions. *Bank v. Armstrong*, 92 Mo. 265; *Hilz v. Railroad*, 101 Mo. 36; *Thorpe v. Railroad*, 89 Mo. 650; *Bettes v. Magoon*, 85 Mo. 580; *Loomis v. Railroad*, 17 Mo. App. 340. A party cannot be heard to complain of an error which he invites or adopts. We think the petition sufficient to support the verdict for money had and received, and especially as the case was tried by both parties on that theory.

There was much irrelevant testimony introduced by plaintiff over the objection of defendant, but none of it is of such materiality as to justify a reversal on that ground, as it could not possibly have had any influence on the jury in making their verdict.

The terms of the sale of the six car loads of wheat by Johnson-Brinkman Commission Company to Imboden Commission Company being cash, and for which

the latter gave a worthless check, was the sale incomplete, or did the title of the wheat pass by the delivery of the bill of lading by the vendor to the purchaser and those claiming title under him with notice at the time of his purchase of the terms of the contract, or that the purchase money had not been paid? In the case of *Bank v. Railroad*, 46 N. W. Rep. (Minn.) 342, it was held that where goods are sold for cash on delivery, and payment is made by the purchaser by check on his banker, such payment is only conditional, and the delivery of the goods also only conditional; and. if the check on due presentation is dishonored, the vendor may retake the goods even from an innocent subvendee for value, unless he has been guilty of such negligence 'or laches as equitably stop him from so doing. That a check on 'a bank is not payment unless by express contract it is so received, and is only payment when the money is received on it; and that there is no presumption that a creditor takes a check in absolute payment arising from the mere fact that he accepts it from the debtor, is well settled law, there is no question. 2 Parsons on Contracts [7 Ed.], 624; *Woodburn v. Woodburn*, 115 Ill. 427; *Brown v. Leckie*, 43 Ill. 497; *Hodgson v. Barrett*, 33 Ohio St. 63; Benjamin on Sales, sec. 731.

As between vendor and purchaser, where the sale of the chattels is a cash sale, the delivery of the thing sold and the payment of the purchase money are concurrent acts, and the former may reclaim his property if the purchase money be not paid according to the terms of the sale, either in the hands of the vendee or of a purchaser with or without notice, of the terms of the sale, and that the purchase money has not been paid, *provided* the vendor has not waived the cash payment and has been guilty of no laches or such conduct

as would estop him from so doing. *Decan v. Shipper*, 35 Pa. St. 239; *Leven v. Smith*, 1 Denio 571.

A cash sale and a sale upon subsequent condition are entirely different. In the first, the payment of the purchase money and delivery of the property are concurrent acts, one and the same transaction, while the latter is a sale and delivery of the thing sold on condition subsequent, subject to be defeated by failure of the purchaser to comply with the terms of the contract of purchase. The former may be avoided by the vendor upon failure by the vendee to pay the purchase money, while the property is in his hands or in the hands of any other purchaser unless the payment of the purchase price has been waived. While section 5178, Revised Statutes 1889, invalidates conditional sales, as to the creditors of the vendor and subsequent purchasers in good faith when the goods are delivered to the vendee, except where the condition is evidenced by writing executed, acknowledged and recorded as in the case of chattel mortgages, section 5180, same statute, was manifestly intended to invalidate numerous devices which had sprung up for the evasion of the statute, such as the practice of leasing, renting or hiring the property when the real transaction was a sale on the plan of the vendee receiving possession and paying the purchase money in installments.

This statute has no application to the case in hand, where the terms of the sale are cash on delivery. In such case there is nothing to record, so as to notify subsequent creditors and purchasers, as there may be in conditional sales.

It was held by this court prior to the passage of sections 5178 and 5180, Revised Statutes *supra*, that in a sale of chattels when possession was delivered to the vendee, if by express agreement the title is to remain in the seller until the price is paid, the right of

property is not settled in the purchaser until the payment. *Parmlee v. Catherwood*, 36 Mo. 479; *Robbins v. Phillips*, 68 Mo. 100, and authorities cited; *Little v. Page*, 44 Mo. 112. And if the vendor had been guilty of no laches, he might reclaim the goods even from an innocent purchaser. *Griffin v. Pugh*, 44 Mo. 326; *Little v. Page, supra*. This statute, however, changed this, and since then a different rule has prevailed.

Where it is clear that payment is a condition precedent or at least concurrent, it necessarily follows that the right of property does not pass until that is done, even though the article is delivered, unless the circumstances show that the vendor thereby waived his right to immediate payment. The sale here being simply for "cash," no express reservation of title being made, the voluntary delivery and transfer of the bill of lading might well be considered, at least *prima facie*, a waiver of prepayment, especially as to third parties. *Smith v. Dennie*, 6 Pick. 262; *Carleton v. Sumner*, 4 Pick. 516; *Farlow v. Ellis*, 15 Gray 229; *Scudder v. Bradbury*, 106 Mass. 422; *Hammett v. Linneman*, 48 N. Y. 399; *Bowen v. Burk*, 13 Penn. St. 146; *Upton v. Cotton Mills*, 111 Mass. 446; *Mixer v. Cook*, 31 Me. 340; *Freeman v. Nichols*, 116 Mass. 309; *Haskins v. Warren*, 115 Mass. 514; *Goodwin v. Railroad*, 111 Mass. 487.

In the case in hand, a bill of lading for the wheat had been issued to plaintiff by the railroad company into whose cars the wheat had already been loaded for shipment, which bill of lading was transferred by plaintiff to the Imboden Commission Co. and by the last named surrendered to the railroad company and another bill of lading issued by the railroad company to Imboden Commission Co. By section 744, Revised Statutes, 1889, bills of lading of the kind now under consideration are made negotiable. And by section 745 of the same statute, it is provided that any and all

persons to whom the same. may be transferred are deemed and held to be the owners of such goods, wares, merchandise, grain, flour, or other produce or commodity therein described.  There was not only a delivery of the wheat in fact, but a symbolical delivery as well, which is .declared by statute to vest in the assignee of the bill of lading the title to the property therein described.

The evidence shows very conclusively that there was no intention on the part of plaintiff to waive the cash payment for the wheat, but it was guilty of laches in suffering it to be shipped from Kansas City, and in delivering its bill of lading to the Imboden Commission Co., and it would in consequence thereof be estopped from claiming the wheat or the proceeds arising from the sale thereof in the hands of an innocent holder without notice.  The sale of the wheat being a cash sale, if the defendant knew that the purchase money therefor had not been paid by Imboden Commission Co. or that Imboden Commission Co. was not the owner of the wheat at the time it, defendant, received the draft in payment therefor from Albers & Co. through their correspondent in St. Louis, and applied it to the credit of Imboden Commission Co., it is not an innocent purchaser and must account to plaintiff for the amount of the purchase money according to the contract price, between plaintiff and the Imboden Commission Co.  These questions were fairly presented to the jury by the instructions of the court, and their finding was against the theory of innocence on the part of the defendant.

It makes no difference that Imboden Commission Co. was indebted to defendant at the time of the transaction and prior thereto; it could not apply the funds that in legal contemplation belonged to another party to the payment of its debts, without its knowl-

edge or consent. The evidence shows very conclusively that defendant knew all about the business transactions of Imboden Commission Co., as all payments for grain purchased by it, as well also as all collections received on sales of grain sold by it, were made through defendant bank. The conclusion is irresistible that it knew all about the manner and mode of the purchase of grain by the Imboden Commission Co. and that the wheat in controversy when bought by it, was bought for cash, and that it had not been paid for.

We do not think that the bringing of the attachment suit by plaintiff against the Imboden Commission Co., nor the purchase by plaintiff of the office fixtures amounted in law to an affirmance of the sale of the wheat by plaintiff to that company. This precise question was before the St. Louis Court of Appeals in the case of *Anchor Milling Company v. Walsh*, 20 Mo. App. 107, where the facts were that the plaintiff had brought suit and levied an attachment upon certain property of the defendant, thereby asserting the defendant's title to it. Afterwards the plaintiff, finding that it had misconceived its remedy, it dismissed the attachment suit and brought replevin, thereby asserting the property belonged to it. The court held that there was no "estoppel by record, for the attachment has not proceeded to judgment. There is no estoppel *in pais*, for the defendant has not taken such action in consequence of the suing out of the attachment that he will receive detriment in a legal sense from the conduct of the plaintiff in changing his position and pursuing a different remedy. If the rule of the circuit court were generalized, it would amount to this, that a litigant elects his remedy in every case, in the first instance, at his peril. If he finds that he has made a mistake, whether in consequence of erroneous views of law or fact, he has nevertheless estopped himself from

retracing his steps. He cannot dismiss his suit and institute a new proceeding of a different nature against the same party. But no one supposes that this is law. It seems, however, to be supposed that there is something peculiar in an attachment suit which proceeds upon an affidavit and a seizure in the first instance of the defendant's property, which takes it out of the ordinary rule that the plaintiff may abandon one action without estopping himself from pursuing any other remedy which he may have against the debtor in respect of the subject matter of such action. We know of no foundation for such a distinction." *Lapp v. Ryan*, 23 Mo. App. 436; *Butler v. Hildreth*, 5 Met. 49.

So it was held by the supreme court of Indiana in the case of *Bunch v. Grave*, 12 N. E. Rep. 517, that where a party who imagines he has two or more remedies, or who misconceives his rights, is not to be deprived of all remedy because he first tries a wrong one. See also *Kelsey v. Murphy,*. 26 Pa. St. 78-83; *Morris v. Rexford*, 18 N. Y. 552; *Lee v. Templeton*, 73 Ind. 315. The bringing of the attachment suit had a tendency to show a waiver by plaintiff of the payment of the purchase money for the wheat, but as the writ was dismissed before judgment thereon, it was no affirmance of the sale, nor was it a bar to the prosecution of this suit. Judgment affirmed. All concur.