# WM. C. RICHARDSON, Public Administrator of GEO. W. POLSTON, Deceased, Appellant, v. MOFFITT-WEST DRUG COMPANY, Respondent.

### St. Louis Court of Appeals, February 25, 1902.

1. **Petition: SUFFICIENCY OF IN AN ACTION FOR MONEY HAD: PROOF, SUFFICIENCY OF: PRACTICE, TRIAL.** In the case at bar, after formal averments of the death of his intestate and his taking charge of the estate, plaintiff states in his petition, "That the defendant, a corporation at all times herein named, is indebted to the estate of George W. Polston, deceased, in and to the sum of forty-five hundred dollars for money had and received to the use of said estate over and above any and all indebtedness on the part of said Polston to defendant, which said money defendant obtained upon and from a certain policy of insurance payable to him, said George W. Polston, and duly issued to said Polston by the John Hancock Mutual Life Insurance Company. That the same was duly paid to said defendant on or about May 1, 1900, and has been wrongfully held by it ever since, although the same was duly demanded prior to the institution of this suit, but defendant refused and still refuses to pay the same to the damage of plaintiff in and for the sum of forty-five hundred dollars." The petition concludes with a prayer for judgment for that sum with interest from the date when the proceeds of the policy were collected by the defendant. Defendant's answer was a general denial. Plaintiff's official character and his charge of Polston's estate were admitted. Proof was made of the death of Polston. The insurance policy was introduced and showed that it was issued by said insurance company on Polston's life for five thousand dollars, payable to his executors or administrators, on satisfactory proof of his death; and it was also shown that on the thirtieth day of April, 1900, said insurance company paid on account of said policy forty-two hundred and eighty-nine dollars to defendant. A demand by plaintiff of the defendant for the money collected on the policy was proven to have been made on the eleventh day of September. No evidence was offered tending to show the policy had been assigned to the defendant or the nature of defendant's claim to it or its proceeds. This is all the evidence introduced

by plaintiff. *Held*, that a demurrer to the evidence should not have been sustained, and that plaintiff was entitled to judgment for the amount of the policy received together with interest.

2. **Action: MONEY HAD AND RECEIVED: WHEN IT WILL LIE: PLEADING AND PRACTICE.** An action on the common count for money had and received by the defendant to the use of plaintiff, lies whenever one person has received money belonging to another which in equity and good conscience he ought to pay to the owner.

3. ———: ———. And this form of assumpsit has been carried into the practice under the code notwithstanding the requirements of the code demanding "a plain and concise statement of the facts constituting the cause of action."

4. ———: ———: **INDEBITATUS ASSUMPSIT.** When a petition alleges the defendant is indebted to plaintiff for money had and received for the use of plaintiff in a certain sum; that the same was duly paid to defendant and is unlawfully withheld from plaintiff after a demand by plaintiff, it states a cause of *indebitatus assumpsit*, the common count for money had and received.

5. **Possession: WHEN EVIDENCE OF OWNERSHIP.** Mere possession by one party of an unindorsed written obligation either negotiable or non-negotiable, calling for the payment of money to some other person than the holder either absolutely, or in the happening of a contingency, does not raise a presumption that the holder of the instrument owns or is entitled to the proceeds.

6. **Practice, Trial: PRACTICE, APPELLATE: REINSTATING VERDICT.** Parties can appeal from an order of a *nisi prius* court sustaining a motion for a new trial, and when the appeal is heard in the appellate court the latter must say on the record before it whether the trial court was justified in granting a new trial, and if it was not, must reverse the ruling and order the verdict to be reinstated.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

REVERSED AND REMANDED *(with directions)*.

*Carl Otto* and *R. P. & C. B. Williams* for appellant.

(1) "Whenever a person has money in his possession, however he may have come by it, that belongs to another, and

which *ex aequo et bono* he has no right to retain, the person to whom it belongs may maintain an action for it as for money had and received. Thus, when a person has purchased property from one who had no title thereto, and has sold it, and converted it into money, the true owner may maintain an action for money had and received instead of an action for the property or its value. But in such case his recovery would be limited to the sum actually received for the property, irrespective of its actual value." 4 Wait's Action and Defense, 471, and authorities cited. "Where the defendant, not having title to property, sells it and receives money therefor, the true owner may recover the amount received by him, in an action for money had and received." Tamm v. Kellogg, 49 Mo. 118. (2) And so, in order to sustain an action for money had and received, privity of contract is not required. "Where a person receives money which of right belongs to another, the latter may maintain an action therefor as for money had and received, and to maintain an action it is not essential to show privity of contract in respect to the money or property. It is only necessary to show that the fund in equity and good conscience belongs to the plaintiff, and that the defendant has no right to retain it, from which the law will imply a promise on the part of the defendant to pay the money to the plaintiff." Citing Johnson v. Bank, 116 Mo. 568. (3) And again in the case of Pipkin v. Loan Co., 80 Mo. App. 6, this court says: "No objection to the sufficiency of the petition was raised in the lower court, hence, the petition will be held sufficient to support the judgment unless it wholly fails to state a cause of action. R. S. 1889, sec. 2047; McDermott v. Claas, 104 Mo. 21; Paddock v. Somes, 102 Mo. 235. The first count is an assumpsit for money had and received in common-law form and good at common law and is permissible under the code. Moore v. Mfg. Co., 113 Mo. 107; Fox v. Car Co., 16 Mo. App. 126; Mansur v. Botts, 80 Mo. 655."

*S. T. G. Smith* and *Thos. S. Meng* for respondent.

(1)   Proof of the issuance of the policy was not, as against defendant, proof that Polston's administrator was entitled to its proceeds.   By the effect of the presumptions that business is transacted in the ordinary course, and that every one is presumed to discharge his obligations and perform his duties, the proceeds of the policy having been paid to defendant, it must be presumed that defendant was the assignee thereof.   Williams v. Mitchell, 112 Mo. 300; White v. Ingram, 110 Mo. 474; Ivy v. Yancey, 129 Mo. 501; Allen v. Logan, 96 Mo. 591; Wendover v. Baker, 121 Mo. 273.   (2) And in such case the burden of proof is upon plaintiff to show defendant's lack of interest.   Lenig v. Eisenhart, 127 Pa. St. 59; Home Life Assn. v. Seager, 128 Pa. St. 533.   (3)   An insurance policy may be assigned by parol and delivery.   In re Babcock, 12 N. Y. St. Rep. 841.   If defendant has any peculiar knowledge of the transaction, it is only by reason of Polston's death; and in such case the statute bars its testimony as to matters peculiarly within its knowledge, but there is no rule of law which would subject it to the additional hardship of assuming the burden of proof.   R. S. 1899, sec. 4652; State ex rel. v. Thompson, 81 Mo. App. 549.   (4)   While it is not necessary to show privity of contract in order to maintain an action for money had and received, the mere fact that there is no privity should not be considered sufficient to support a recovery.   Plaintiff's right was a chose in action against the insurance company, and unless there is a showing that such right has been destroyed or impaired, or is for some reason ineffectual, he can not proceed against defendant.   Funkhouser v. How, 17 Mo. 225; Funkhouser v. How, 24 Mo. 44; Dickey v. Fox, 24 Mo. 217; Green v. Timmons, 28 Mo. App. 459; Corey v. Webber, 96 Mich. 357; Hathaway v. Town of Cincinnatus, 62 N. Y. 434.

GOODE, J.—After formal averments of the death of his intestate and his taking charge of the estate, plaintiff states in his petition:

"The defendant, a corporation at all times herein named, is indebted to the estate of George W. Polston, deceased, in and to the sum of forty-five hundred dollars, for money had and received for the use of said estate over and above any and all indebtedness on the part of said Polston to defendant, which said money defendant obtained upon and from a certain policy of insurance payable to him, said George W. Polston, and duly issued to said Polston by the John Hancock Mutual Life Insurance Company; that the same was duly paid to said defendant on or about May 1, 1900, and has been wrongfully held by it ever since, although the same was duly demanded prior to the institution of this suit, but defendant refused and still refuses to pay the same to the damage of plaintiff in and for the sum of forty-five hundred dollars."

The petition concludes with a prayer for judgment for that sum with interest from the date when the proceeds of the policy were collected by the defendant.

Defendant's answer was a general denial.

Plaintiff's official character and his charge of Polston's estate were admitted. Proof was made of the death of Polston, the insurance policy was introduced and showed that it was issued by said insurance company on Polston's life for five thousand dollars, payable to his executors or administrators, on satisfactory proof of his death; and it was also shown that on the thirtieth day of April, 1900, said insurance company paid on account of said policy forty-two hundred and eighty-nine dollars to the defendant. A demand by the plaintiff of the defendant for the money collected on the policy was proven to have been made on the eleventh day of September. No evidence was offered tending to show the policy had been assigned to the defendant or the nature of defendant's claim to it or its proceeds.

This was all the evidence introduced by plaintiff, and at its close the defendant requested an instruction in the nature of a demurrer to said evidence, which the court refused to give. Thereupon, counsel for defendant declined to offer any testimony in the case and judgment was entered for plaintiff against defendant in the sum of forty-four hundred and six dollars and ninety-two cents, being the amount paid to the defendant on the policy, with interest to the date of the judgment.

A motion for a new trial on various grounds was filed and sustained on the ground that the evidence introduced was insufficient to support the finding and judgment.

Plaintiff appealed from the order sustaining it.

Instead of having the facts before us by which this cause could be disposed of according to its merits, the disagreeable duty is imposed on us of deciding it on a naked question of procedure, though there is nothing to suggest that it would have been difficult to adduce the facts. The record leaves us entirely in the dark as to how the defendant got the insurance policy which was issued to Polston or why the proceeds thereof were paid to it. To conclude the rights of litigants on so barren a showing of what their rights are, is eminently unsatisfactory to a court and there can rarely be a good reason for compelling it to do so. But when a cause is rested on a technicality instead of its merits, there is no other course open to a tribunal charged with the decision of it; if parties choose to risk their rights and interests on some refinement of practice or procedure, they must abide a technical judgment, whatever the hardship it may entail.

This action is one on the common count for money had and received by the defendant to the use of plaintiff. That form of assumpsit lies, as has been said, whenever one person has received money belonging to another which in equity and good conscience he ought to pay to the owner, and has been carried into the practice under the code though it is sometimes

criticised as incompatible with the code requirement of "a plain and concise statement of the facts constituting the cause of action." Fox v. Pullman Car Co., 16 Mo. App. 122; Mansur v. Botts, 80 Mo. 651. The declaration at common law is very simple; merely a statement that the defendant owes or is indebted to the plaintiff in a certain sum of money received by the defendant for the use of plaintiff, a promise of payment by the defendant, and a prayer for judgment. The allegation of a promise to pay is unnecessary under the code. Tamm v. Kellogg, 49 Mo. 118.

The simplicity of the action is indeed what commends it to the favor of the courts. A plaintiff is exonerated from the necessity of stating the special circumstances of his case and, therefore, from the danger of a nonsuit by a variance between his allegations and the proof; while as to the defendant: "It is the most favorable way in which he can be sued; he can be liable no further than the money he has received, and against that may go into every equitable defense upon the general issue; he may claim every equitable allowance; he may prove a release without pleading it; in short he may defend himself by everything which shows that the plaintiff *ex aequo et bono* is not entitled to the whole of his demand." Moses v. Macferlan, 2 Burr. 1005. Such was the encomium pronounced by Lord MANSFIELD more than a century ago.

While the petition in the case at bar states matters unnecessary to constitute a cause of action, it likewise states all that are necessary. It alleges the defendant was indebted to the estate of George W. Polston, deceased, in the sum of forty-five hundred dollars, for money had and received for the use of said estate; that the same was duly paid to defendant and, was unlawfully withheld after a demand made by plaintiff. Those allegations state a cause of *indebitatus assumpsit* —the common count for money had and received.

Was it proven prima facie? That is a question which we have found no exactly apposite precedent to aid us in

answering; that is, none which instead of resembling this case is absolutely identical with it; for in every opinion we have read, the facts of the controversy were before the court; and the special contract between the parties to the litigation, if there was one, always determines their rights when it is disclosed. Stout v. Tribune Co., 52 Mo. 342; Fox v. Pullman Car Co., supra. Here no contract or privity of any kind between plaintiff's intestate and the defendant, by which the latter got the fund or the plaintiff was entitled to it, is alluded to in the pleadings or proof; so we are not apprised that there was one save by the suggestion of respondent's counsel.

But as to the proof: plaintiff's representative capacity was admitted, he proved the death of Polston, the apparently unassigned policy showed, prima facie, that plaintiff was entitled to its proceeds and the undisputed testimony showed defendant had received them.

It is on the point of the insufficiency of this proof that plaintiff's right to the judgment which the circuit court set aside, is assailed, it being earnestly insisted that the evidence fell short of establishing a prima facie case in his favor.

The learned and able discussion of the law by respondent's counsel in support of this position treats it from several points of view with persuasive force; but inasmuch as we have been reluctantly compelled, after the most serious and attentive reflection, aided by two presentations of the case, to hold that the theory advanced by them is untenable, we will submit the reasoning that has led us to that conclusion, and answer as well as we can the arguments which are urged in opposition to it.

The salient fact in the case is that the policy of insurance bears no assignment on it, in writing, to the defendant and no assignment or pledge, either verbal or written, was shown; nor does anything appear in regard to the defendant's right to the proceeds, except the inference which may be drawn from its having the policy in its possession, or such further inference as may be deduced from the allegations of the petition.

We will inquire then, in the first place, concerning the effect of the bare facts (unaided by any allegation in the petition) that the respondent had possession of the policy and was paid the amount due on it by the insurance company in establishing a right in its favor to receive and retain the money it called for on the death of Polston.

Much stress is laid by the respondent on the legal presumption that business is transacted according to its usual and ordinary course and that every one is supposed to perform his obligations and discharge his duties; wherefore it is said that, as the proceeds of the policy were paid to the defendant who held the instrument, it must be presumed defendant was the assignee thereof.   Does the legal presumption about the usual course of business being followed in all transactions until the contratry is shown, authorize any such deduction in this case, as the respondent endeavors to draw from it?   We think not, and that the presumption on which the respondent relies is wholly inapplicable here, because it is met and countervailed by the positive legal rule or presumption, that a person once shown to have had the title and ownership of personal property or a chose in action, is presumed to continue the owner thereof until an alienation of the property is shown, and the party relying on the fact of such alienation must prove it. That rule is declared and stated in nearly the words we have used in the opinion in Vastine v. Wilding, 45 Mo. 89, a case not different from the one at bar in any material respect except is so far as the allegations contained in the plaintiff's petition in the present case distinguish it.   Vastine was a public administrator in charge of the estate of one Berger, deceased, who had in his lifetime deposited a sum of money in the United States Savings Institution of St. Louis, and received the following certificate of deposit from said institution:

"August Berger has deposited in this office $1,000, payable to the order of himself on the return of this certificate, six

months after date, with interest at the rate of five per cent per annum."

The certificate of deposit was found among the papers of one Lewis Chrisner by his administratrix, after the death of Berger, and said administratrix of Chrisner turned it over to Wilding for collection. There was no testimony tending to throw any light on how it got among Chrisner's papers or in his possession or as to the ownership of it, except what appeared on its face. Vastine demanded possession of it as the property of Berger's estate, but Wilding refused the demand, claiming to hold it as the property of Chrisner's estate, and Vastine then brought suit for it. We quote from the opinion:

"The certificate itself establishes beyond controversy the fact that Berger was its original owner; that he deposited the fund, and, as evidence of his title, took a certificate of deposit payable to his own order. His title thus acquired must be presumed to continue until a divestment of it is shown; and a mere manual delivery of the paper without indorsement and unaccompanied with evidence of a consideration paid, would not of itself pass the title."

Further on it is said:

"There is nothing but the naked, unexplained possession to justify the pretentions of the Chrisner estate to ownership. If the fact of once having been the owner of personal chattels raises the presumption of a continued title, as in Magee v. Scott, how decisive should be that presumption in a case like the present, when the paper in dispute points out and designates the plaintiff's intestate as being the true owner and having upon it no mark or sign suggestive of a change of title.

"I have examined all the accessible authorities cited in the brief of the defendant's counsel, and I find that not one of them asserts the doctrine that the possession of an unindorsed negotiable note, bill, or certificate of deposit payable to the order of the payee therein named, is prima facie evidence of title in the holder as against the payee named in the

body of the instrument; the holder furnishing no extrinsic evidence of his equitable title or interest. I apprehend no such case can be found. The Missouri cases referred to raise questions of practice, and the decisions at most have but a remote bearing upon the present inquiry.

"Possession is prima facie evidence of title when paper. is made payable to bearer, as bank notes; or where, if payable to order, the paper has once been properly indorsed, and put into circulation. The cases referred to by defendant's counsel are mostly of this character, or concern personal chattels."

Could any precedent be more pointed? Here, too, the instrument whose proceeds are in controversy, was payable to the plaintiff's intestate, George W. Polston. Nothing but possession by the defendant is shown to justify its claim to retain those proceeds. The policy was found in its hands, unindorsed, with no memorandum showing how it came there and no oral testimony was offered on the subject. That authority by our Supreme Court appears to be conclusive on the point we are at present considering, namely: whether the fact that the Moffitt-West Drug Company held the policy and collected the money due on it when Polston died raised a presumption that it was entitled to keep the money, which it was incumbent on the plaintiff to overcome?

The case of Magee v. Scott, 9 Cush. 148, which is referred to in the foregoing opinion, was decided by one of the ablest jurists this country has produced, Chief Justice SHAW, of Massachusetts, on facts much resembling those in the present record. The plaintiff Magee, brought an action of trover to recover the value of certain furniture alleged to have been converted by the defendant. It was said:

"At the trial in the court of common pleas, there was evidence tending to show that the articles were purchased by the plaintiff, and subsequently came into the possession of the defendant *by consent of the plaintiff*, but upon what contract, bargain or understanding did not appear.

"The conversion by the defendant, if any, consisted in his refusing to deliver the property upon the demand of the plaintiff, giving as a reason that he claimed to own it."

Judge SHAW regretted as we do, that the facts of the matter were not in evidence, but said that the cause when properly understood, appeared to be governed by a few plain principles, of which the first was:

"That presumption of ownership continues until some alienation is shown. . . . A party having this ownership does not lose it, by permitting another to be in possession. The ordinary mode of proving property is, proving that it was purchased and paid for, and it will be deemed in law to be the purchaser's until something is shown to change the title, and merely parting with the possession affords no conclusive evidence of such change. Possession is prima facie evidence of title, good against everybody but the one proving property; that is, against anyone but the right owner.

"The defendant's possession was prima facie evidence of title in him, but it was rebutted by proof of prior possession and actual ownership, on the part of the plaintiff. The burden of proof was on her, and she sustained it by proof of title."

In Dorn v. Parsons' Admx., 56 Mo. 601, Baldwin Parsons, deceased, whose administratrix was Sarah Parsons, the defendant, had executed in his lifetime a note payable to one N. A. Birkley, which after his death the plaintiffs offered for probate against his estate, proving the execution of the note, but giving no evidence to prove they owned it. The opinion says:

"There was no proof at all of ownership. The possession of a note payable to bearer or indorsed in blank, would be prima facie evidence of ownership. But the possession of such a note as this is no evidence at all of ownership."

The last remark refers to the fact that the note was payable on its face to N. A. Birkley alone, neither to his order nor to bearer. That case certainly tends to refute the argument

that mere possession of a non-negotiable instrument payable on its face to some one else, carries with it a presumption of ownership in the holder. But the same is true of a negotiable instrument held by some one else than the payee but unindorsed by the latter, as was ruled in Cavitt v. Tharp, 30 Mo. App. 131, and the plaintiffs therein were adjudged properly nonsuited because they had rested after merely introducing in evidence the notes on which they sought to recover.

So in Rice v. McFarland, 41 Mo. App. 489 (also reported in 34 Mo. App. 404) which was an action to foreclose a deed of trust, we find a similar ruling. The opinion says:

"Rice's possession of the Morris note, unindorsed, does not relieve him from the presumption that the note still belonged to Stearns. Such possession of the note unassigned, is no evidence of ownership. Said note was payable to the order of Stearns and being unindorsed by him to Rice, the presumption still exists that Stearns continued the owner."

Much stronger is a case from an outside jurisdiction (Bowers v. Johnson, 49 N. Y. 432). The defendant Johnson had executed two mortgages to Richard Blydenburgh. The latter assigned them to Josiah Bowers, who died, and after his death the bonds and mortgages were assigned by his executor to the plaintiff Benjamin F. Bowers, who was substituted as plaintiff in place of the original assignee, Josiah Bowers. There was a defendant in the case by the name of Bingham, who claimed that he had title to and was the owner of the mortgages at the time Blydenburgh, the original mortgagee, assigned them to Josiah Bowers. The trial court found that Bingham had no title to or interest in them at that time. The evidence on the point showed that at the time Blydenburgh made the assignment, Bingham had possession of the mortgages and retained such possession down to the time of the trial; that he had advanced and paid a sum of money for Blydenburgh, the amount of which was somewhat uncertain; that Blydenburgh had assigned to him several other mortgages,

amounting to a less sum that the amount advanced. On these facts the court said *inter alia*:

"A chose in action may be sold or pledged without writing; and such sale, if otherwise valid, will give title to the purchaser. · But the question in the present case is whether the evidence proved a sale or pledge. The counsel for the appellant insists that proof of an advance of money by Bingham, coupled with proof of his possession of the mortgages, established the fact, either of a purchase of the mortgages by him, or their pledge to him as a security for such money."

The opinion, after reviewing another authority, says:

"But here [namely, in the United States] mortgages are very rarely transferred by an agreement and delivery without writing; and, in the absence of written evidence, there is a presumption against any transfer. In the present case the assignment of the other mortgages by Blydenburgh to Bingham shows that, in the transaction of this kind of business they acted in conformity with the prevalent usage; that when it was their intention to transfer the title, an assignment of the mortgages was executed. Under the evidence in this case, no legal error was committed by the judge in his finding that Bingham had no title to the mortgages."

We might say that policies of life insurance are very rarely transferred in this country without some written assignment, if we were disposed to follow the case last cited; but it is unnecessary to go as far as it does, nor are we satisfied that it stops within safe bounds.

But unquestionably, the foregoing citations from our own courts establish the doctrine that mere possession by one party of an unindorsed written obligation, either negotiable or non-negotiable, calling for the payment of money to some other person than the holder, either absolutely or on the happening of a contingency, does not raise a presumption that the holder of the instrument owns it or is entitled to the proceeds. Applying this rule to the case at bar, it follows that the custody of

the insurance policy raised no presumption that the defendant owned it and was entitled to collect and retain the money due on it at Polston's death.   We think no presumption arises on the facts before us, even leaving out of consideration the rule of law we have discussed, that the insurance company paid the money on the policy to the defendant because the latter was the assignee of it.   The most that can be said is that the payment may have been made by the insurance company to the defendant for that reason; not that it will be presumed to have been so made until the contrary is shown.   ·The·mere fact that (if we were to indulge in surmises) that would be the most plausible one to accept, will not justify us in giving it the force and effect of a legal presumption which operates to impose on plaintiff the burden of proving facts to overcome it.   For aught we know the money may have been paid to the defendant with the consent of all parties concerned in behalf of the plaintiff.

As defendant's case is not helped by any presumption arising from its custody of the policy and collection of the proceeds, the next inquiry is, what assistance, if any, does its case receive from the allegations made in the petition?   In other words, granting that the burden of proof would have been on the defendant to show its right to retain the proceeds of the policy but for certain statements in the petition, do those statements amount to such admissions in favor of the defendant's right, as to relieve the latter of said burden and make it incumbent on the plaintiff to show that such admitted right in behalf of the defendant had been lost or extinguished before plaintiff's action was instituted?

If called on to justify itself by proof for retaining the money collected, the defendant must have shown, of course, either that it owned the policy or had a lien on it by way of pledge or assignment; and it follows that to find a justification for its retention of the money in the admissions made by the

plaintiff in his petition, we must be able to find that the statements in the petition amount to an admission that the defendan owned the policy or had a lien on it. Can the allegations be construed to make such an admission, viewing them in the light most unfavorable to the plaintiff, as we are willing to concede for the sake of argument, must be done? (Loehr v. Murphy, 45 Mo. App. 519). Only two statements in the petition are relied on by the defendant as constituting an admission that the defendant had some kind of right to the proceeds of the policy when they were paid, which admission it is claimed would operate to place the burden on the plaintiff to prove that the right had been lost, extinguished or satisfied before plaintiff's suit was brought.

We will consider the effect of these two statements. Stress is laid on the allegation that the money was *duly paid* to the defendant by the insurance company, the argument being that this was equivalent to saying that it was regularly and lawfully paid and, therefore, defendant is presumably entitled to keep it, which presumption plaintiff must overcome. Allowing to the word "duly" the significance claimed for it, still, alleging the money was lawfully paid to defendant is altogether different from alleging defendant might lawfully retain it and by no means involves that inference or conclusion. Then, too, the contention that the assumption of right payment raises an implication of right retention, is rebutted by the next words of the petition: "It has been ever since wrongfully withheld." Certainly, if the words of a pleading are to be taken most strongly against a pleader, the meaning he intends to convey must be gathered from all the allegations taken together and not merely from one removed from its context. The meaning of the allegations of this petition as a whole can only be, that the defendant got the money rightly but kept it wrongly. We fail, therefore, to see how the use of the words "duly paid" imposed an additional burden of proof on the plaintiff.

Moreover, in the case of Magee v. Scott, supra, it expressly appeared that the defendant had obtained possession of the property, which was the subject-matter of the action, *with the consent of the plaintiff,* who afterwards demanded it from the defendant and on the latter's refusal to return it, sued for its value, which is just what happened in the present case. Now, proof that the defendant in that case had obtained the property with the *consent* of the plaintiff would be as strong in favor of his right to keep it as is the mere averment, in this case, that the money due on the policy was duly paid to the defendant, in favor of the right of the latter to keep said money. Yet it was held in Magee v. Scott, notwithstanding this proof, that the plaintiff was entitled to recover the value of the property unless the defendant showed a right to retain it and that the plaintiff satisfied or discharged the burden of proof which was on her by "proof of title." The court said:

"The defendant's possession was prima facie evidence of title in him but it was rebutted by proof of prior ownership on the part of the plaintiff."

Certainly the statement that the money was duly paid to the defendant is not tantamount to an admission that the defendant owned the policy or had a lien on it.

The other statement in the petition which is claimed to be an admission fatal to the plaintiff's prima facie case, is a phrase extracted from the middle of an allegation, the purport of which was, that the defendant owed the estate of Polston "forty-five hundred dollars for money had and received to the use of said estate over and above any and all indebtedness on the part of said Polston to defendant." Defendant urges that this was an admission that Polston was indebted to it when he died and that his estate is still indebted to it. Granting this is true (though the allegation only inferentially so states, if it does at all) and that such an indebtedness existed, there is not the least intimation that the policy was pledged or assigned to secure the indebtedness, or that the defendant had any lien

on it whatever; there is nothing which can be construed into an admission of a lien in favor of the defendant, which plaintiff was bound to prove had been removed or satisfied. A mere indebtedness, which might constitute an offset in defendant's favor would not, unless it was secured by a lien, break down plaintiff's prima facie case or defeat his recovery; for that was a matter to be pleaded and proven, as an offset, which a defendant may have, must be.

So we are unable to find in said statements of the petition an admission that defendant owned the policy or held it in pledge or was the assignee of it; which alone could impose on the plaintiff the burden of showing a performance by Polston or himself of the duty to discharge the debt for which the lien was given.

The most that can be said for both of the above statements is that they amount to a concession that Polston owed the defendant. But such an admission, in the absence of any pleading of a counterclaim or setoff, would not militate against plaintiff's right to recover the amount collected by the defendant or in any way increase his burden of proof.

Respondent also insists no proof was made that defendant received the money for the use of the estate or wrongfully withheld it. The insurance policy itself showed Polston's personal representative was entitled to its proceeds and it was admitted plaintiff was his duly appointed administrator in charge of his estate. On these facts, without more, the law holds defendant received the money for plaintiff's use and raises an implied promise on defendant's part to pay it to the plaintiff. Wilson v. Turner, 164 Ill. 398; Covey v. Webber, 96 Mich. 357; Hathaway v. Town of Cincinnatus, 62 N. Y. 434; Leete v. Pac. Mill & Mining Co., 88 Fed. Rep. 957; Mumford v. Wright, 56 Pac. (Colo.) 744; Kreutz v. Livingston, 15 Cal. 344; Stanwood v. Sage, 22 Cal. 516; Tutt v. Ide, 3 Blatchf. 249; Bishop v. Taylor, 27 S. Rep. (Fla.) 287; Gains v. Miller, 111 U. S. 395; Winningham v. Fancher, 52 Mo. App. 458.

Another point made against plaintiff's action is, that it will not lie because no privity of contract was shown to exist between the plaintiff and defendant. None was needed. The disposition of the courts has been (though as it infringes on the code, this policy is questionable) to enlarge the scope of the action for money had and received and while a contractual relation between the parties is required to be shown in some jurisdictions, it is not in many others, including this one. Johnson-Brinkman Co. v. Central Nat. Bank, 116 Mo. 558. In fact, the remedy has been often applied in cases where there was no such privity; often where rival claimants demanded the money, each believing he was entitled to it and it was paid to the one not entitled, and even in cases of tort.

In Johnson-Brinkman Co. v. Central Nat. Bank, supra, the cause of action arose out of the conversion by the defendant of property belonging to the plaintiff; as it did, also, in Missouri Pacific Railway Co. v. McLiney, Admr., 32 Mo. App. 166, and several cases cited above.

In Tamm v. Kellogg, supra, the city of St. Louis had condemned some land which both the plaintiff and defendant claimed to own. The city paid the damages awarded to Kellogg, and Tamm was permitted to recover the money in an action for money had and received, as he turned out to be the true owner and the law would dispense with privity of relation between the parties or imply it. In such instances, the injured party is allowed to waive the tort and recover the amount received on the common count of *indebitatus assumpsit*. It was said by PARKER chief justice, in Hall v. Marston, 17 Mass. 574:

"There are many cases in which that action is supported without any privity between the parties, other than what is created by law. Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to this action although he has never seen or heard of the party who has the right. *When the fact is proved that he has*

*the money, if he can not show that he has legal and equitable ground for retaining it, the law creates the privily and the promise."*

The italicised remark in the above quotation indicates when the burden of proof shifts. As plaintiff's case stood at the close of the testimony, it appeared the insurance company had paid money to which he was prima facie entitled, to the defendant. Whatever right the defendant had to keep the money was matter of defense, which in this form of action, was entirely available to it, whether the right under which it held was legal or equitable, as was pointed out by Lord MANSFIELD in Moses v. Macferlan, 2 Burr., supra. If the policy had been pledged or assigned to defendant, that fact could have been shown and the interest of the parties properly adjudged.

Moreover, it is a well-recognized rule of pleading that a fact peculiarly within the knowledge of one party, must ordinarily be established by it, even though it is pleaded by the opposite party. Frame v. Sovereign Camp, 67 Mo. App. 127; State v. Schar, 50 Mo. 393; State v. Lipscomb, 52 Mo. 32. The plaintiff here, as administrator in charge of the estate of the decedent, could hardly be so well apprised of any agreement or relation between Polston and the defendant as the defendant itself, nor could the circumstances of such relation, if one existed, be so readily proven by him. Respondent's excuse for retaining the fund was a matter of defense easily within its reach and should have been shown. The Supreme Court of the United States so held in a case where a creditor of the assured claimed the proceeds of a policy on his debtor's life:

"The indebtedness of O'Brien to plaintiff, if any existed was a matter peculiarly within the knowledge of plaintiff, and if that indebtedness is an essential factor in his right to recover, justice requires that he should, by affirmative testimony, es-

tablish both the fact and amount." Crotty v. Union Mut. Ins. Co., 144 U. S. 621.

The rule strikes us as equally applicable to a defendant claiming to hold insurance money, as a creditor of the assured, against the person entitled to it by the terms of an unassigned policy. If the policy itself or other evidence introduced by the plaintiff had shown an assignment to the respondent, as in the Pennsylvania cases cited by it, the situation would be materially different.

Respondent urges that as Polston was dead, no agent who transacted the business with him in its behalf could be permitted to testify and, hence, if the contract between it and Polston rested in parol, there would be no means of proving it. That is true; but it is a contingency which sometimes happens to a litigant, on account of the rules of evidence, and a court can not assist a party who is unable to make out his case or defense because the only person by whom he could prove the facts is disqualified as a witness. Such miscarriages of justice as are entailed by the incompetency of witnesses in certain circumstances, or of testimony, must be submitted to as long as the rules of evidence continue as they are. The theory of the law is that there is less danger of injustice being done, on the whole, by keeping out the testimony in such circumstances than by admitting it.

Finally, it is pressed on us that in the interest of justice, the new trial granted by the circuit court ought to be sustained so that defendant can make proof of its right to retain the insurance money, or a portion of it, and this argument has weighed heavily on us. But as the law stands in regard to appeals from an order granting a new trial, we do not see how we can yield to it. Only one ground was assigned by the court for granting a new trial in this case, namely, that the evidence offered by the plaintiff was insufficient to support the judgment. Our view of the subject has led us to the opposite conclusion; that it was sufficient. What then is the

state of the matter? If the plaintiff makes out a prima facie case, that is, proves all the law requires him to prove in support of his averments, he is entitled to judgment, unless the defendant meets his proof with countervailing evidence. In this case, no evidence to rebut the plaintiff's case was offered by the defendant at all, and so the trial court properly entered judgment in plaintiff's favor.

Can this court say the circuit court erred in setting aside that judgment and granting a new trial and at the same time order the case to be retried? This would be an injustice alike to the plaintiff and the learned circuit judge, and utterly inconsistent. We can readily see that some provision ought to be made by which an appellate court may order a cause to be retried when justice would likely be promoted thereby because it is probable the defendant had a defense which was not made through an error of judgment, even though the plaintiff was entitled to a verdict as the evidence stood. But there seems to be no such power in an appellate court of this State now. Parties either wisely or unwisely have been given the privilege of appealing from an order of a *nisi prius* court sustaining a motion for a new trial, and when the appeal is heard in the upper court the latter must say on the record before it whether the trial court was justified in granting a new trial and if it was not, must reverse that ruling and order the verdict to be reinstated. This may occasionally work a hardship and probably will—possibly may do so in this case; but if so, it is the inevitable result of the statute itself. It is true, sometimes cases have been reversed and the party against whom the decision went, allowed a new trial in the court below; none, however, which is analogous to the present controversy as it now stands.

The whole object of the law permitting an appeal to be taken from an order for a new trial by a party in whose favor judgment was given, would be rendered nugatory if an appellate court might decide that he was entitled to the very judg-

ment which was set aside and still uphold the order setting it aside. The purpose of that statute was to prevent a party who had obtained a judgment from being deprived of the benefit of it by the court in which it was obtained vacating it without sufficient reason—and the reason must be set out in the order. True, the appellate court will sustain the order if it can be done, either on the ground assigned or any other found in the record; but it can not be sustained on a mere suggestion that it would be in the interest of justice, or a surmise that it would be, if the entire record conclusively shows the party who got the judgment was legally entitled to it as the case stood when it was rendered.

In Crawford v. Railroad Company, not yet reported, the Supreme Court says:

"If upon a hearing this court should determine that the circuit court erred in granting a new trial the order of the defendant to that effect would be reversed and the judgment of plaintiff in that court would be restored in full force and vigor, whereas it is now suspended by the order granting a new trial."

It results from the foregoing consideration that the order of the court setting aside the judgment in this case in favor of the plaintiff must be reversed and the cause remanded with directions to the circuit court to set aside the order sustaining the motion for a new trial and to overrule said motion. *Bland, P. J.* and *Barclay, J.*, concur.