[Civ. No. 8969. First Appellate District, Division One.—August 14, 1933.]

C. J. TOWEY, Respondent, v. HENRY ESSER et al., Defendants; SANTA MARGARITA LAND AND CATTLE COMPANY (a Corporation), Intervener and Appellant.

Hugh Ward Lutz for Appellant.

D. Brandon Bernstein for Respondent.

KNIGHT, J.—Respondent C. J. Towey, as assignee of Southwest Commission Company, brought this action against Henry Esser and two fictitious parties, to recover the sum of $6,573 claimed to be due for money had and received, money loaned to and expended on behalf of defendants, and on an account stated; and pursuant thereto caused to be attached in the hands of W. H. Goodno, doing business under the name of Pacific Live Stock & Commission Co., the sum of $4,061.66; whereupon appellant Santa Margarita Land and Cattle Company, claiming title to the money so attached, and by leave of court first had and obtained, filed a complaint in intervention to recover said money. Esser defaulted in the original action, and the cause went to trial on the issues raised by the allegations of the complaint in intervention and the answer thereto filed by Towey. It was heard and determined by the court, a trial by jury having

been expressly waived, and judgment was entered awarding the money to Towey, from which the land and cattle company has appealed.

The controversy grows out of the following undisputed facts: The Santa Margarita Land and Cattle Company owns a large ranch near Santa Margarita, in San Luis Obispo County, and is engaged in the business of raising and selling cattle. On or about June 17, 1931, Esser, a cattle buyer, called at the ranch to purchase upwards of a hundred head. Having bought cattle from said company three times before within the preceding two years, he was known to the ranch superintendent, named Miller, who transacted the business with Esser on this particular occasion. Miller was authorized by his employer to sell only for cash, and he so informed Esser, the understanding with the latter being that the cattle should be weighed on the ranch scales and the cash paid or a check therefor delivered to the seller when the cattle were weighed out. Accordingly the cattle were rounded up and weighed, and Miller delivered to Esser a "brand certificate" which it was necessary, under the law, for Esser to present to the railroad company before it would accept the cattle for shipment. The cattle were then driven by the seller's men to the loading corrals of the Southern Pacific Company at Santa Margarita, and on Saturday, June 20, 1931, were loaded into three cars and billed by Esser to Pacific Live Stock & Commission Co., Union Stock Yards, Los Angeles, "for the account of John Schwab". Immediately after the cattle were loaded the amount of the purchase price was computed by Miller, and Esser delivered to Miller a draft for $4,475.91, drawn on the consignee, Pacific Live Stock & Commission Co., Union Stock Yards, Los Angeles, and signed "John Schwab by H. Esser". Esser then wrote out a bill of sale, in simple form, which Miller signed and handed back to Esser. Shortly after receiving the draft Miller forwarded the same, together with a report of the sale, to the San Francisco office of his employer, and on June 22, 1931, the draft was deposited in a San Francisco bank for collection. It arrived at the correspondent bank in Los Angeles on June 23, 1931, and at 2:10 P. M. of the same day was presented for payment to the Pacific Live Stock & Commission Co. However, in the meantime the cattle arrived, and about noon of that same day were resold

by the Pacific Live Stock & Commission Co. and the proceeds of the sale attached by the respondent Towey, who as assignee of the Southwest Commission Company had filed his action at 10:37 that same morning. Consequently payment of the draft by the Pacific Live Stock & Commission Co. was refused.

Immediately following the levy of the attachment Esser left the state, going to Colorado; and he never returned. Schwab was a cattle buyer residing in San Jose, but according to the intervener's evidence, he denied having any knowledge whatever of the transaction involving the purchase of said cattle by Esser or the giving of said draft in payment thereof. Summons in the original action brought by Towey against Esser was served on the latter personally in Denver, Colorado, and, as stated, he defaulted. Upon being served with the complaint in intervention the Pacific Live Stock & Commission Co. deposited in court the net proceeds of the sale of the cattle, amounting to $4,061.66.

The trial court's judgment awarding said proceeds to Towey is based on findings, which in effect are legal conclusions drawn from the foregoing facts, that title to the cattle passed unconditionally and absolutely to Esser upon the simultaneous delivery of the cattle and the draft in Santa Margarita on June 20, 1931, despite the admitted fact that it was a sale for cash and that the draft given in lieu of cash proved to be utterly worthless. In so holding the decision of the trial court, in our opinion, is, as appellant contends, in direct conflict with and contrary to the law declared in the case of *South San Francisco Packing & Provision Co.* v. *Jacobsen,* 183 Cal. 131 [190 Pac. 628], which involved facts almost identical with those of the present case. There a stock buyer named Jacobsen purchased several carloads of hogs from stockraisers named Taylor and Rosecrans, at their ranch in Idaho, the agreement being that the sale was to be for cash, that the hogs were to be delivered at a certain place in Idaho where Jacobsen or his agent were to receive them, and make payment therefor by check. The hogs were delivered and received accordingly, and the check delivered about midnight on Thursday, June 10, 1915. The check was deposited for collection the following day and on Monday, June 14th, in due course it reached the bank in Idaho Falls on which it was drawn and

payment was refused for lack of funds. It appears that on the day the check was drawn Jacobsen had money deposited in the bank, but not sufficient to cover the check, and that on the following day he increased his balance to a sum more than enough to pay the check, but by Monday he had reduced the balance far below the amount called for by the check, and consequently payment was refused. Shortly after purchasing the hogs Jacobsen disappeared, but in the meantime he had shipped the hogs to the South San Francisco Packing and Provision Company and it had resold them; and as soon as Taylor and Rosecrans discovered that the check was worthless they demanded from the South San Francisco Packing and Provision Company, under a claim of ownership, the proceeds of the sale of the hogs. However, as here, shortly before such demand was made a creditor, the Western Meat Company, filed an action against the buyer, Jacobsen, and attached the fund in the hands of the packing company; thereupon the packing company instituted a suit in interpleader and paid the fund into court. There, as here, also, the trial court held that despite the fact that the check was worthless title to the hogs passed at the time of the delivery of the check therefor, and that consequently the attaching creditor, the Western Meat Company, was entitled to the proceeds from the sale of the hogs. On appeal it was held to the contrary, and the judgment was reversed, the court holding that the sellers, Taylor and Rosecrans, were entitled to the proceeds. The decision was based upon the legal proposition, as it is stated in substance in the syllabus, that "where personal property is sold to be paid for upon delivery by check, the sale is to be treated as one for cash, and if the check is dishonored, the title to the property, as between the parties to the sale, remains in the seller, who may retake the property, or if the property has been resold, claim the proceeds in the hands of the second purchaser as against an attaching creditor of the original buyer". Among the numerous authorities cited by the court in support of its decision are Benjamin on Sales, 7th ed., 755; 23 R. C. L. 1448; 35 Cyc., pp. 308, 322 and 327. ■ True, as pointed out by the court therein, where the seller expressly agrees to accept a check or bill or note, as absolute payment, title to the goods will pass upon the delivery of the goods and the acceptance of such check or

bill or note, regardless of whether the paper is honored on due presentation thereof; but, as the court goes on to say, where goods are sold for cash on delivery and payment is made by check, such check is, in fact, payment only when the cash is received on it; and there is no presumption that the seller takes the check as absolute payment merely from the fact that he accepts it from the buyer, the presumption being, says the court, just to the contrary, citing *National Bank of Commerce* v. *Chicago etc. Co.*, 44 Minn. 224 [46 N. W. 342, 560, 20 Am. St. Rep. 566, 9 L. R. A. 263]; *Hodgson* v. *Barrett*, 33 Ohio St. 63 [31 Am. Rep. 527]; *Johnson-Brinkham Co.* v. *Central Bank*, 116 Mo. 558 [22 S. W. 813, 38 Am. St. Rep. 615]. In applying the foregoing rules to that particular case the court said: "In effect, this sale was for cash as distinguished from a sale on credit, payment to be made, as is customary in similar commercial transactions, by check, and as it was not agreed that the check was to be received as absolute payment, and the delivery of the goods also was conditional, and the check, upon due presentation, was dishonored, title to the hogs remained in the seller." And in conclusion the court said: "The title to the hogs, therefore, as between the parties to the sale having remained in the original sellers, it follows, we have no doubt, that the fund in the hands of the plaintiff, the purchaser from Jacobsen, constituting part of the purchase price, belongs to the original sellers, Taylor & Rosecrans; and we also entertain no doubt that so far as the attaching creditor is concerned it has no better right to the fund than Jacobsen himself. (*Ward* v. *Waterman*, 85 Cal. 491, 508 [24 Pac. 930].)" Two later cases citing the Jacobsen case with approval are *Clark* v. *Hamilton Diamond Co.*, 209 Cal. 1 [284 Pac. 915], and *Galeppi* v. *C. Swanston & Son*, 107 Cal. App. 30 [290 Pac. 116].

And so in the present case, the undisputed evidence shows that the sale of the cattle to Esser was to be a sale for cash as distinguished from a sale on credit, and that there was no understanding or agreement whatever that the draft given by Esser was to be accepted as absolute payment. On the contrary, the evidence shows it was taken merely in accordance with the custom followed in similar commercial transactions. Therefore, under the authorities above cited, as between the parties to the sale, title to the cattle re-

mained in the seller dependent upon the payment of the draft; and since the draft was dishonored the seller was entitled, as in the Jacobsen case, to the proceeds from the sale of the cattle as against the attaching creditor, who had no better right thereto than Esser himself would have had.

Moreover, in the Jacobsen case, *supra*, it was strongly indicated that if the check were given for the purpose and with the intention of perpetrating a fraud, the sale would have been void both as to Jacobsen and his attaching creditor. The court went on to point out, however, that after the issuance of the check and before its presentation for payment three days later, Jacobsen on two occasions had more than sufficient money on deposit to meet its payment, which, the court stated, coupled with the presumption of innocence and fair dealing, furnished some foundation for the finding of the trial court against fraud. But in the present case the evidence shows without conflict that Esser clearly intended to and did in fact perpetrate an absolute fraud. He falsely represented that Schwab was the real purchaser of the cattle, he gave a spurious draft in payment thereof, purporting to be the draft of Schwab, and he shipped the cattle under Schwab's name to the Los Angeles commission house for the account of John Schwab; whereas, as stated, Schwab knew nothing whatever about the transaction. It is evident, therefore, that the seller here established a much stronger case in its favor than did the sellers in the Jacobsen case.

Respondent seeks to avoid the controlling effect of the decision in the Jacobsen case on two grounds: First, he asserts that it is based on facts different from those of the present case; but he has wholly failed to point out any material difference and after a careful examination we have been unable to find any. ■■ Secondly, he intimates that the rule of that case was changed by the adoption in this state in 1931 of the so-called Uniform Sales Act. The answer to this is that the transaction here involved was closed before the end of June, 1931; whereas the Uniform Sales Act did not become operative until August 14, 1931, and it is expressly declared therein (Civ. Code, sec. 1797) that none of its provisions shall apply to any sale or to any contract to sell, made prior to the taking effect of said act.

For the reasons hereinabove assigned the judgment is reversed; and exercising the authority granted by section 956a of the Code of Civil Procedure this court finds from the undisputed evidence and contrary to the findings of the trial court that title to said cattle at all times remained in the Santa Margarita Land and Cattle Company, the seller thereof. The findings being thus modified, the trial court is directed to enter judgment accordingly in favor of the intervener, the Santa Margarita Land and Cattle Company, for the amount of the net proceeds derived from the sale of said cattle by the Pacific Live Stock & Commission Co.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 13, 1933, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 11, 1933.