[Civ. No. 10193. Second Appellate District, Division One.—May 24, 1935.]

LOS ANGELES TRANSFER COMPANY (a Corporation), Appellant, v. THE RITZ CARLTON HOTEL COMPANY OF HOLLYWOOD, LTD. (a Corporation), et al., Respondents.

CALIFORNIA WESTERN HOLDING COMPANY, LTD. (a Corporation), et al., Respondents, v. LOS ANGELES TRANSFER COMPANY (a Corporation), Appellant.

Overton, Lyman & Plumb and William R. James for Appellant.

Frank James and Everett H. Mills for Respondents.

ROTH, J., *pro tem.*—These cases were consolidated for the purposes of trial and upon conclusion thereof a single set of findings of fact, conclusions of law and a single judgment was entered, the judgment being against the Los Angeles Transfer Company in each case. Said company appeals from said judgment.

The general factual background of these cases is identical to that which is outlined in the case of *California Western*

*Holding Co.* v. *R. D. Merrill et al.* (referred to herein as the Lee case), (*ante,* p. 131 [46 Pac. (2d) 175]), decided this day by this court. The causes of action pleaded in these actions are predicated on the same preorganization agreement (hereinafter referred to as agreement), as set forth in the Lee case. There are certain additions and variations of fact which are as follows:

In the cases at bar the Transfer Company made its subscription on the twenty-fifth day of November, 1929. The Holding Company, it will be remembered, was organized on October 14, 1929, and the Operating Company on January 13, 1930. On October 29, 1929, a permit was issued by the commissioner of corporations to the Holding Company authorizing it to issue seven shares of its capital stock, one to each of the seven organizers, who constituted the management committee, as set forth in the agreement. On December 19, 1929, a permit was issued to the members of the management committee, authorizing said members to take subscriptions for stock in the two companies from the persons who were named in the application filed by the management committee for such permit and to collect from each of the parties so named 20 per cent of the amount which each had agreed to pay. Through some error the Transfer Company which had signed the agreement "L. A. T. Co., By Edward D. Lyman" was not named in the application, Edward D. Lyman being named in its stead, and consequently was not named in the permit which was issued pursuant to the application, said Edward D. Lyman being named in its stead.

On November 26, 1929, Transfer Company paid to the members of the management committee 20 per cent of its subscription to wit: $2,040. On February 17, 1930, resolutions were passed at several meetings of the boards of directors of the respective companies, accepting the various subscriptions of the various subscribers, including the subscription of the Transfer Company. On August 6, 1930, permit was issued to the Operating Company authorizing it to sell shares of its capital stock to the persons named in its application therefor, and authorizing the application of the moneys previously paid to the members of the management committee toward the purchase price. On the same day a permit of like tenor was issued to the Holding Company.

The application for the respective permits did not, nor did either permit set forth the name of the Transfer Company, the name of Edward D. Lyman having been erroneously substituted. On August 18, 1930, a second call for 20 per cent was made on the various subscribers to the agreement, including the Transfer Company, which call was paid by the Transfer Company. On February 25, 1932, Transfer Company initiated one of the instant actions in which it was plaintiff and the companies and the several members of the management committee, defendants, to recover the money previously paid on its subscription and to have the subscription canceled and declared void. In March, 1932, the companies and the several members of the management committee instituted the other of the instant actions as plaintiffs against the Transfer Company, as defendant. In this latter action the Transfer Company answered and filed a cross-complaint seeking in its cross-complaint the identical relief it prayed for in the first action, which it had instituted and filed as plaintiff.

In May, 1932, additional permits were issued to the companies, authorizing the companies to make further calls for the balance of the subscriptions which had been made, and authorizing the companies to sell and issue shares of stock to the persons named in the application and in the amended applications upon which the last permits were issued. The amended applications contained corrected lists setting forth the subscribers to the stock, as set forth in the agreement, and contained the name of Transfer Company. The articles of either corporation did not set forth the subscription of the Transfer Company, nor did they set forth a copy of the agreement.

It has undoubtedly been noted that this case is distinguishable from the Lee case in that the agreement here was signed after the incorporation of the Holding Company, the domestic corporation, but prior to the incorporation of the Operating Company, the Delaware corporation. At the time the subscription was taken, to wit: November 25, 1929, the holding corporation had a permit to issue seven shares of stock, one each specifically to each of the members of the management committee. It had no permit to issue or sell any stock in addition thereto. As in the Lee case, the subscription was for the stock of Holding Company and Operating Company to be issued in units as is more specifically set forth

in the *résumé* of facts contained in the Lee case. Unlike the Lee case the instant actions actually went to trial, and the specific facts as to the transaction between the parties here involved are more clear. The decisive legal questions, however, other than the question which arises by reason of the mistake in listing the name of Edward D. Lyman in lieu of Transfer Company, and failure to furnish appellant with a copy of the permit, are the same.

The additional facts in the instant case make little difference in the application of the principles enunciated in the Lee case. The facts here show that subscriptions were taken to the stock of the Holding Company after its incorporation without a permit authorizing the Holding Company to issue or sell such stock first having been obtained and that a preorganization subscription was taken for the stock of a foreign corporation without a permit. Under the law neither subscription was valid even though considered severally.

In the instant case, however, the stock was sold in units and the actions are upon the subscription as a whole and not upon its several parts, conceding that it could be severed. Under such circumstances, if the subscription for the stock of the domestic corporation were proper and the preorganization subscription for the stock of the foreign corporation improper, or *vice versa*, the entire subscription is void. (*First National Bank of Calexico* v. *Thompson*, 212 Cal. 388 [298 Pac. 808]; *Tatterson* v. *Kehrlein*, 88 Cal. App. 34, 52 [263 Pac. 285]; *Teachout* v. *Bogy*, 175 Cal. 481 [166 Pac. 319]; *Klombies* v. *Weeks Poultry Com., Inc.*, 121 Cal. App. 175 [8 Pac. (2d) 940]; *Castle* v. *Acme Ice Cream Co.*, 101 Cal. App. 94, 99 [281 Pac. 396]; Civ. Code, sec. 1608.)

The fact that the agreement recited that it was subject to the approval of the commissioner of corporations and that with reference to the Transfer Company herein involved, the facts show that no money was actually paid to the members of the management committee until after the permit had been issued to them is of no assistance, because every contract is subject to the law, whether it says so or not. The mere fact that it says what is presumed, does not empower those who write such a contract to thus automatically license themselves to break the law. The agreement being void in its inception the parties were not *in pari delicto* and a permit subsequently issued could not make it a valid agree-

ment. ■ Furthermore, in the instant case, since the permits were introduced in evidence, it affirmatively appears that such permits did not provide as required by the agreement that units when issued shall be deposited with Title Insurance & Trust Company or other trust company or banker to be held by the management committee as trustee to hold the same for a period not exceeding one year for the purposes mentioned in the agreement. Conceding, therefore, the validity of the subscription, the agreement upon which it was based was not complied with. This fact in itself is sufficient to predicate a cause of action in appellant. In view of what has been said it becomes unnecessary to pass upon the fact of the mistake in names and the subsequent correction thereof by amended permit, or whether the failure of the companies to give copies of the permit to its subscribers, as required by the permit, was fatal.

Since there is no conflict in the evidence in this case, the finding of the trial court that the respondent companies complied with the terms of the agreement, and the further finding to the effect that the permits issued by the commissioner of corporations authorized the sale to appellant, are not supported by the evidence. Such findings are hereby set aside and in lieu thereof, this court finds that the respondent companies did not, nor did either of them, comply with the terms of the agreement, and that said respondent companies were not, nor were either of said companies empowered or authorized to sell stock to appellant. The conclusions of law are also modified so that appellant is entitled to judgment in the action of *Los Angeles Transfer Co.* v. *Ritz Carlton Hotel Co. of Hollywood, Ltd., et al.,* No. 335988, canceling its subscription agreement and declaring the same to be void and decreeing that appellant Transfer Company is entitled to recover from respondents the sum of $4,080 together with interest at the rate of 7 per cent per annum on the sum of $2,040 from the twenty-sixth day of December, 1929, together with interest at the rate of 7 per cent per annum on the sum of $2,040 from the eighteenth day of August, 1930. The conclusions of law are further modified so that respondents, plaintiffs in the action of *California Western Holding Co., Ltd., et al.,* v. *Los Angeles Transfer Co.,* No. 336190, take nothing against defendant therein, and that appellant, de-

160

fendant in said action, be awarded judgment on its cross-complaint.

. The judgment and orders are accordingly reversed and the actions remanded to the trial court with instructions to said court to grant judgment to appellant in accordance with the modified findings of fact and conclusions of law.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 18, 1935, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 22, 1935.