[Civ. No. 19596.   Second Dist., Div. One.   Apr. 26, 1954.]

BENEDICT H. SAMPSON, Respondent, v. BENJAMIN A. SAPOZNIK et al., Appellants.

Pacht, Tannenbaum & Ross, Isaac Pacht, Clore Warne and Maxwell E. Greenberg for Appellants.

Dryer, Burris & Lagerlof, Joseph H. Burris and H. Melvin Swift, Jr., for Respondent.

DORAN, J.—The present appeal is from a judgment awarding plaintiff $19,500, with interest, against the defendants Sapoznik, Ticktin, and Landfield, from which judgment the first two named defendants are appealing.   The amended complaint contains five causes of action including rescission

for fraud and for breach of contract, damages for money advanced under a void contract, declaratory relief, and for money had and received.

From the findings and conclusions, it appears that the judgment was based on plaintiff's third cause of action, namely "That the sale to plaintiff of the 1,000 shares of common stock of the Scarfanet Co., a California corporation, was in violation of the . . . Corporate Securities Act," in that no authorization had been granted for the issuance or sale of such stock, and that no application for such permission had been filed. The trial court concluded that "the sale and Memorandum of Agreement executed in connection therewith are illegal and void."

The record discloses that on October 6, 1950, a written memorandum of agreement, dated September 30, 1950, was signed by plaintiff Sampson and defendant Theodore J. Ticktin, who was president of the Scarfanet Company, reciting that Ticktin "is entitled to receive 1,000 shares of the common stock of the Scarfanet Co., . . . pursuant to an application of the said corporation for a permit to issue such stock to the second party, which permit has been filed or is about to be filed." Sampson therein agrees to pay "the sum of $10,000.00 in payment and as the consideration for 1,000 shares of common stock of the Scarfanet Co., . . . ; said stock being all of the outstanding and issued stock of the said corporation." Sampson likewise agrees to pay $500, "for an assignment of the indebtedness in the amount of $1,958.27 of the corporation to the second party (Ticktin) for monies advanced by the second party to the corporation."

In addition to the above agreement, Sampson was given an assignment of license "to manufacture a certain combination scarf and hairnet under the name of Scarfanet," signed by Theodore Ticktin, Joseph Landfield and Benjamin Sapoznik. Also dated the same day, September 30, 1950, is a memorandum of agreement "to indemnify and hold harmless the Scarfanet Co." in reference to certain contract liabilities, which recites that Sampson "has this day purchased all of the right, title and interest in and to 1,000 shares of the common stock of the Scarfanet Co. . . . being all of the issued and outstanding stock of said company to be issued pursuant to the Application for Permit to issue stock dated September 30, 1950."

A letter of the same date, was signed by Ticktin, Landfield

and Sapoznik, in which "The undersigned hereby agree that in the event that the Commissioner of Corporations . . . refuses to grant his permit for the contemplated issuance of 1,000 shares of common stock . . . the undersigned officers, directors and creditors of Scarfanet Co. . . . will cause said corporation to sell and transfer all of its property and assets to Benedict H. Sampson for the sum of $19,500.00," etc. Ticktin, Landfield and Sapoznik on the same day executed a power of attorney, authorizing Sampson "To execute an assignment to himself or his nominee of any certificate representing shares of stock issued to me by the Scarfanet Co. . . . pursuant to an Application for Permit to Issue Stock dated September 30, 1950, filed or to be filed."

It is contended by the appellants that the material findings of fact "are misleading and unsupported by the Record on Appeal," and that such findings are ambiguous, inconsistent, uncertain and indefinite. Appellants' basic argument is that the transaction in question between Sampson as purchaser, and Sapoznik, Ticktin and Landfield, (the only officers and directors of Scarfanet Company), was not within the purview of the Corporate Securities Act.

This argument is predicated on the assumption that "The essence of the transaction" was that "Defendants were selling a going business to plaintiff for an agreed price. The business had been incorporated, but no stock had been issued. . . . The corporation was therefore only a shell. . . ." The facts, says appellants' brief, "were tortured and twisted into a corporate sale of stock, and plaintiff recovered damages, sounding in tort, for the sale to him of 'void stock'." According to appellants, "Sampson did NOT buy 1,000 shares of common stock of the Scarfanet Co., as found in Finding IV. He knew, at all times during the negotiations, that no such stock was in existence. The form of the transaction contemplated . . . was a future transfer of stock to-be-issued."

A review of the findings and conclusions of the trial court, and of the evidence disclosed by the record, fails to show any material ambiguities, uncertainties or inconsistencies which would in any manner tend to invalidate the judgment rendered. Appellants' brief singles out certain items of evidence by reason of which the trial court is alleged to have arrived at a wrong conclusion. But this position ignores the well established rule that "every favorable inference and presumption which may fairly be deduced from the evidence

should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which is contradictory must be disregarded." (*Scott* v. *Nevis*, 120 Cal.App.2d 619, 621 [261 P.2d 797].) The present record undoubtedly discloses substantial evidence in support of the findings and judgment.

As stated in the respondent's brief, "The contract documents themselves are the clearest evidence that the transaction between plaintiff and defendants involved a sale of corporate securities." The terminology used in the initial agreement between Sampson and Ticktin is that Sampson agreed to pay "the sum of $10,000.00 in payment and as consideration for 1,000 shares of common stock of the Scarfanet Co." Indeed, the word "stock" is used repeatedly in all of the documents connected with the transaction. The sellers were all of the officers and directors of the corporation, and as found by the trial court, "each and every defendant, in all the transactions with plaintiff, was acting in behalf of Scarfanet Co., . . . and on behalf of all other defendants." The facts were not "tortured and twisted into a corporate sale of stock," as claimed by appellants.

Section 25009 of the Corporations Code defines the term "Sale," as including "every disposition, or attempt to dispose, of a security or interest in a security for value." More specifically, it includes "an offer to sell, an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale." Of course, the agreements and documents signed by the parties were not "securities"; such writings merely evidence the intention to buy and sell the stock of Scarfanet Company. That the 1,000 shares of common stock, admittedly the subject matter of the transaction, was a "security" within the meaning of the Corporate Securities Act, cannot be doubted.

And, as said in *People* v. *Oliver*, 102 Cal.App. 29 [282 P. 813], "Because the stock in a corporation was to be issued and delivered at a future date is no defense to this action."

Appellants claim that the present transaction did not involve the corporation itself, said to be a mere "shell"; that it was a personal transaction by individuals disposing of a "going business"; that if "securities" were involved, it was within the exemption covered by section 25152 of the Corporations Code which states that "the Corporate Securities Law does not apply to the sale of securities when (a) made by or on behalf of a vendor not the issuer or underwriter thereof

who, being a bona fide owner of the securities, disposes of his own property for his own account," is not persuasive.

The trial court's finding that such was not the case is amply supported by the evidence which, among other things, discloses that the appellants were all of the officers and directors of Scarfanet Company, and that Sampson paid all of the money for the purchase of the 1,000 shares mentioned in the documents, into the treasury of the corporation. Indeed, appellants' brief refers to the fact the funds were "funneled through the corporate bank account," and thereafter reached the hands of the appellants by way of corporation checks.

In this respect the case is not unlike that of *Randall* v. *Beber*, 107 Cal.App.2d 692, 699 [237 P.2d 994] where the reviewing court says: "These facts demonstrate that a sale of 200 shares of the capital stock of the corporation was made to the plaintiffs when they subscribed for them and paid the purchase price to the corporation . . . prior to the issuance of a state permit therefor. . . . The acts of the president and vice-president . . . each a director, in planning the sales . . . and the receipt of the purchase price for and its deposit in bank in the name of the corporation . . . made this sale . . . . The statute imposes penalties upon a corporation making such a sale, and upon each person who knowingly authorizes, directs, or aids in the sale. . . . From the imposition of these penalties in such a statute a legislative intent to void the proscribed 'sale' is inferred."

It is further contended that if the transaction was illegal, then Sampson was *in pari delicto* with the appellants by reason of Sampson's knowledge that no permit had been issued, and consequently is entitled to no relief. However, as pointed out in respondent's brief, it has been held in *Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718 [134 P.2d 777], and elsewhere, that "the purchaser of a security is not *in pari delicto* with the issuer even though he may have knowledge of the fact that no permit has been issued." And, in the instant case, there is evidence that the appellants' attorney had informed Sampson's then attorney on October 6, 1950, that application for a permit had been filed and that a deputy Corporation Commissioner had said that everything was in order. There is no merit in this contention.

Neither in the cases cited in appellants' brief, nor in the evidence disclosed by the record, is any valid reason for reversal presented. The basic nature of the transaction seems

to have been correctly interpreted by the trial court as one within the purview of the statute. The damages awarded were not excessive.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied May 18, 1954, and appellants' petition for a hearing by the Supreme Court was denied June 23, 1954. Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.