[Civ. No. 16616. First Dist., Div. One. Sept. 30, 1955.]

ELIZABETH H. OGIER, Respondent, v. PACIFIC OIL AND GAS DEVELOPMENT CORPORATION (a Corporation) et al., Appellants.

Joseph A. Brown for Appellants.

Melbert B. Adams and Arthur Matin for Respondent.

WOOD (Fred B.), J.—Plaintiff brought this action against Pacific Oil and Gas Development Corporation, James P. George and A. F. Hilding for the recovery of $5,000 which she had paid the corporation for a security allegedly sold to her without the requisite Corporation Commissioner's permit therefor.

*The trial court found*: Defendant Hilding was agent and defendant George was president of Pacific Oil and Gas Development Corporation. On February 18, 1952, plaintiff was a single woman, aged 84, partially blind and reposed trust and confidence in Hilding. On said date, Hilding at the instance of George procured plaintiff's signature to a "letter-agreement" addressed to Pacific whereby she agreed to purchase one-quarter of 1 per cent overriding royalty in various leases enumerated in an attached list, George as president of Pacific affixed his signature thereto under a statement "confirmed

and agreed to," and plaintiff delivered to Hilding two checks, each payable to Pacific in the sum of $2,500. The foregoing was a sale within the meaning of the Corporate Securities Act and a permit of the Corporation Commissioner was required therefor but no permit had been issued or applied for. On February 19, 1952, Pacific filed an application for permission to sell and issue to plaintiff an oil royalty "provided the well to be drilled . . . is completed as a commercial producer," attaching a copy of the letter-agreement to the application but omitting the signatures appended to the letter-agreement. On February 21, 1952, the application was granted, a permit to sell and issue said royalty to plaintiff "for the consideration, in the manner, and on the basis set forth therein"; the permit would expire by its terms if the security were not sold by August 20, 1952. The security was not issued by that date and never has been issued, and the well to be drilled was not completed as a commercial producer and drilling was abandoned by Pacific on or about March 25, 1952. Plaintiff received nothing for the $5,000 paid by her and a total failure of consideration occurred.

*The court concluded* that the sale to plaintiff on February 18, 1952, and the payment of a commission to Hilding were violations of the Corporate Securities Act; that the entire transaction was illegal and void and that plaintiff is entitled to recover from Pacific, from George, and from Hilding $5,000 with interest from February 18, 1952.

*Defendants claim that the things done on February 18, 1952, did not constitute the "sale of a security" proscribed by the Corporate Securities Act.*

They suggest that the evidence is insufficient to support the finding that plaintiff delivered the checks prior to the issuance of the permit but address themselves to what is really a mere conflict of testimony which the trial court decided in the plaintiff's favor.

Next, they direct attention to evidence that Hilding did not deliver these checks to the corporation until February 23d and that these checks were not paid or cashed until February 25th. They would conclude therefrom that the consideration for the security was not paid until after issuance of the permit; hence, no violation of the statute. There are two fallacies in this argument. ▮ First, we think the delivery of the checks to Hilding as Pacific's agent was delivery to the corporation and that when in ordinary course the checks were honored and paid upon presentation to the

drawee bank, such payment related back to February 18th, the date the checks were delivered. (See *Hooker* v. *Burr*, 137 Cal. 663, 668 [70 P. 778, 99 Am.St.Rep. 17] ; *California Stearns Co.* v. *Treadwell*, 82 Cal.App. 553, 558-563 [256 P. 242].) Defendants rely upon cases (such as *Towey* v. *Esser*, 133 Cal.App. 669, 674-675 [24 P.2d 853], and *South San Francisco Packing etc. Co.* v. *Jacobsen*, 183 Cal. 131 [190 P. 628]) which hold that a debt is not paid upon the mere receipt of a check which is dishonored when presented for payment. Plaintiff's checks were honored and paid upon presentment.

■ Second, payment of the consideration for the issuance of a security is not an essential element of a "sale" under the statute, which includes, for example, an "offer" to sell, an "attempt" to sell or the "solicitation" of a sale, "whether done directly or by agent, circular letter, advertisement or otherwise." (Corp. Code, § 25009, subd. (a).) In *Los Angeles Transfer Co.* v. *Ritz Carlton Hotel Co.*, 7 Cal.App.2d 154, 158 [46 P.2d 186], the fact that the money was not paid until after permit issued did not avoid the taint of illegality which attached to a subscription made prior to permit. The fact that here pre-incorporation as well as post-incorporation subscriptions were involved makes no significant difference in respect to the applicable principles.

■ Defendants contend further that because the letter-agreement contained a clause which made its performance contingent upon the procurement by Pacific of a permit from the State Division of Corporations "permitting the consummation of said agreement to pay you five thousand dollars . . . on demand which will be payment in full for my one-quarter of one percent . . . overriding royalty in and to the Leases described . . ." there was no violation of the statute. We overrule this contention upon the authority of *Los Angeles Transfer Co.* v. *Ritz Carlton Hotel Co.*, *supra*, 7 Cal. App.2d 154, 158. (See also *Sampson* v. *Sapoznik*, 124 Cal. App.2d 704, 707 [269 P.2d 205].)

Defendants claim also that the "letter-agreement" was held in abeyance and not given effect until after permit issued; i.e., that a copy thereof signed by defendant George on behalf of Pacific was not delivered to plaintiff until after the permit had been received by Pacific. Defendants' theory seems to be that until the delivery of such a copy no "security" was issued by Pacific or received by plaintiff. ■ But it is not alone the unauthorized issuance of a security with which the statute is concerned. It is also the sale and the *attempt*

to sell, the *offer* to sell, the *solicitation* of a sale, and the *taking of a subscription* in the absence of an appropriate permit which the statute with equal concern proscribes. It is the act of selling that is primarily placed under the examination of the Corporation Commissioner. (*People* v. *Sidwell,* 27 Cal.2d 121, 126-128 [162 P.2d 913].) ▆ The solicitation and execution of the letter-agreement* were illegal and infected the entire transaction with illegality. That illegality was not cured by the subsequent issuance of a permit, there being no "intervening circumstance such as the making of a new agreement between the parties after issuance of the permit and in accordance with its terms." (*Randall* v. *Beber,* 107 Cal.App.2d 692, 700 [237 P.2d 994].) Illegality attaches "because the Corporate Securities Act prohibits the making of such a sale or the acceptance of any of the purchase price and imposes penalties upon the corporation, its officers, agents, and other persons aiding in the sale. The statute does not expressly impose penalties upon the buyer. ▆ Unless he participates in such a fashion, with such a degree of culpability as to put him *in pari delicto* with the corporation and its representatives, he is not without remedy. Under appropriate circumstances he may rescind, tendering the return of whatever of value he has received; if he has received nothing of value, he may without such a tender sue in damages for money or the property, or its value, which he paid or delivered or he may sue for money had and received. [Citations.]" (*Tevis* v. *Blanchard,* 122 Cal.App.2d 731, 738 [266 P.2d 85].) ▆ The law accords such a person "relief against the corporation [Pacific, in this case] and against any person [defendants Hilding and George] who aided the corporation in making the sale. . . . When the purchaser's action is for damages (as in this case), [†] such a participant need not have received any of the consideration paid for the stock." (*Randall* v. *Beber, supra,* 107 Cal.App.2d 692, 701.) There are no facts in the instant case tending to indicate that plaintiff was *in pari delicto* nor does it appear that the defendants claim the existence of any such facts.

The conduct of the defendants in soliciting plaintiff's subscription, in negotiating its terms, in obtaining its execu-

---

*Defendants, appropriately, do not claim that an instrument which evidences a fractional or percentage interest in oil or gas production cannot be a "security" within the meaning of the statute. (See *People* v. *Sidwell, supra,* 27 Cal.2d 121, 126.)

†In the instant case, the second cause of action is for damages.

tion and in taking her check for the $5,000, far transcends the mere business conversation preliminary to any fixed plan which this court held required no permit in *B. C. Turf & Country Club, Ltd.* v. *Daugherty,* 94 Cal.App.2d 320, 329-333 [210 P.2d 760], and markedly differentiates this case from that. In *Robbins* v. *Pacific Eastern Corp.,* 8 Cal.2d 241 [65 P.2d 42], the essential parts of the transaction there involved occurred outside and beyond the jurisdiction of this state whereas here we have an intrastate transaction.

■ *Defendants also claim that the issuance of the permit constituted a conclusive adjudication in their favor as to the validity of the transaction.* A complete answer is that "the doctrine of res judicata may not be availed of in connection with the exercise of administrative powers. . . . For the defense of res judicata to operate as an estoppel there must be a judgment by a court of competent jurisdiction." (*Empire Star Mines Co.* v. *California Emp. Com.,* 28 Cal.2d 33, 48 [168 P.2d 686].) Moreover, the record does not show that the Corporation Commissioner knew that the parties had executed the letter-agreement, indeed, there is some evidence tending to show he well may not have been aware of that fact.

■ Finally, this is a defense which was not presented to the trial court by way of a pleading or in any other manner. It is too late to urge it for the first time upon appeal.

In view of this conclusion, it is unnecessary to consider the correctness of the finding that Pacific, without a permit therefor, paid defendant Hilding a commission for making the sale to plaintiff.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 28, 1955, and appellants' petition for a hearing by the Supreme Court was denied November 23, 1955.