[Civ. No. 28157.   Second Dist., Div. Three.   Feb. 1, 1966.]

ROGER H. KENDALL, Plaintiff and Appellant, v. R. J. MATTISON, Defendant and Respondent.

M. JORDAN NATHASON, Plaintiff, Cross-defendant and Appellant, v. R. J. MATTISON, Defendant, Cross-complainant and Respondent; ROGER H. KENDALL, Cross-defendant and Appellant.

(Consolidated Cases.)

Milo V. Olson for Plaintiffs, Cross-defendants and Appellants.

Fierstein & Dolin and Harvey Fierstein for Defendant, Cross-complainant and Respondent.

SHINN, P. J.—These actions were consolidated for trial and both plaintiffs appeal in a consolidated appeal. Both actions were suits to collect on promissory notes made by defendant Mattison. The notes were given as partial payment for the escrowed sale of corporate stock owned by Kendall and Nathason. Baron has no interest in the note given to Kendall which was assigned to Baron for collection and reassigned to Kendall. Mattison filed a cross-complaint charging Kendall and Nathason with fraud in the transaction, and with violation of the Corporate Securities Law. The court found against him in the fraud issue but held the transaction illegal and gave Mattison judgment against Kendall and Nathason jointly for $10,000 they had received in the sale and for $200 paid on the notes.

Kendall and Nathason each owned 51,108 shares of Automation-Engineering Corporation, which was about 48 percent of the outstanding stock. They were promotional shares received as payment for services rendered in the organization of the corporation. As a condition of issuance they were to be held in escrow as ordered by the Corporations Commissioner. (Corp. Code, § 25508.) Since 1956 the Bank of America had been the escrow holder for these shares of stock. Kendall and Nathason advertised the stock for sale and entered into negotiations with Mattison to sell him their shares. An agreement was signed April 21, 1959, and an escrow established to expedite the sale. The agreed price was $31,000 to be paid as follows: $10,000 cash and the $21,000 balance in the form of three promissory notes in the amounts of $5,500, $9,500 and $6,000. The money and notes were put into the escrow by

Mattison. Kendall and Nathason put in certain documents including the shares of stock and a ''consent to transfer'' signed by the Corporations Commissioner. Each side complied with the terms of the escrow. The $10,000 in cash and the $5,500 note were delivered from the escrow to Kendall. Nathason received the $9,500 note and the $6,000 note and Mattison received the escrowed shares.

Nathason commenced an action in the superior court to collect on the $6,000 note, which matured first. A settlement was reached in that action when Mattison gave Nathason a new note for $15,500 in exchange for the $6,000 note and the $9,500 note. It is on this new note that Nathason is suing. Kendall sues on the $5,500 note.

Kendall and Nathason were the bona fide owners of the stock and the sale was made solely for their own accounts as permitted by section 25152 of the Corporate Securities Law.[1]

A newspaper advertisement in which Kendall and Nathason offered the stock for sale led to the negotiations and agreement with Mattison. The basis of the judgment is disclosed in the findings. The court found that the advertisement, the negotiations, the agreement and the sale through escrow were in violation of section 25009 of the Corporate Securities Law.[2]

The arguments of defendant and the conclusions of the court fail to distinguish between original sales for which a permit is required and sales of securities which have been escrowed in accordance with the terms of a permit under authority of section 25508 of the Corporate Securities Law.

Once shares of stock have been issued and placed in escrow their disposition is governed by the conditions placed on the escrow. The rules governing the transfer of shares that have

---

[1] ''§ 25152. Except as expressly provided in this division, the Corporate Securities Law does not apply to the sale of securities when (a) made by or on behalf of a vendor not the issuer or underwriter thereof who, being a bona fide owner of the securities, disposes of his own property for his own account, and (b) the sale is not made, directly or indirectly, for the benefit of the issuer or an underwriter of the security, or for the direct or indirect promotion of any scheme or enterprise with the intent of violating or evading any provision of the Corporate Securities Law.''

[2] ''§ 25009. (a) 'Sale' or 'sell' includes every disposition, or attempt to dispose, of a security or interest in a security for value.

'' 'Sale' or 'sell' includes all of the following, whether done directly or by an agent, circular letter, advertisement, or otherwise: An offer to sell; an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale; a taking of a subscription; an exchange; any change in the rights, preferences, privileges, or restrictions on outstanding securities.''

been issued and escrowed are set out in Administrative Code, title 10, section 419.[3] Neither plaintiffs' trial counsel nor their counsel on appeal made mention of section 419.

The unstable scaffolding underneath the judgment, as evidenced by the findings and conclusions, consists of these incohesive parts: a sale of securities may not be made without permission granted by the commissioner; an offer to sell is a sale; a sale of escrowed stock cannot be made without the special consent of the commissioner; plaintiffs offered to sell (sold) their stock before the commissioner had given his consent, and thereby violated the law. The fault in this reasoning would appear to be that the law requires that all the terms and conditions of the proposed sale must have been agreed upon in advance and stated in the application to the commissioner for his consent. With this we may safely pass to the next contention of defendant.

As found by the court, one of the conditions of the consent of the commissioner was "that any owner or person entitled to said shares shall not consummate a sale or transfer of said shares, or any interest therein, or receive any consideration therefor, until the written consent of said Commissioner shall have been obtained so to do."

Defendant contends there was a violation of this condition in that consideration was received by the sellers before the consent was obtained. If this had been the case the transaction would have been illegal, the subsequent issuance of the consent would not have cured the illegality and the cases of

---

[3] "419. Application for Permission to Transfer Securities in Escrow. An application for permission to transfer securities in escrow shall be made in writing by the person in whose name the securities stand. The application shall set forth:

(a) The number of securities to be transferred and the name of the proposed transferee.

(b) The number of the certificate from which the securities are to be transferred and the number of securities represented thereby.

(c) The relationship, if any, between the transferor or the issuer and the proposed transferee or if none, the consideration to be received for such transfer.

(d) Whether the consideration is for the direct or indirect benefit of the issuer.

The application shall be accompanied with a statement signed by the proposed transferee that he has full knowledge of the terms of the escrow condition and that he accepts such securities subject to the conditions of the escrow until released by the commissioner.

The commissioner may require additional information from the proposed transferor or transferee, and may require a disclosure to the transferee of any pertinent information concerning the securities or reasons for the escrow."

*Stonehocker* v. *Cassano,* 154 Cal.App.2d 732 [316 P.2d 717], *Ogier* v. *Pacific Oil & Gas Dev. Corp.,* 135 Cal.App.2d 776 [288 P.2d 101], *Duntley* v. *Kagarise,* 10 Cal.App.2d 394 [52 P.2d 560], *L. A. Transfer Co.* v. *Ritz Carlton Hotel Co.,* 7 Cal.App.2d 154 [46 P.2d 186] and *Black Point Aggregates, Inc.* v. *Niles. Sand & Gravel Co.,* 188 Cal.App.2d 375 [10 Cal.Rptr. 761], cited by defendant would be in point, but the cases do not fit the instant case.

There was a provision in the agreement that the sellers would place in the escrow minutes of the directors' meeting of the company authorizing the issuance of a stock option to Mattison for 5,000 shares of the stock ''in partial consideration of his agreement to serve as the general manager of the corporation for a period of one year from and after the date of said minutes.'' It is said by respondent, and the court found, that this would have been in violation of the stock option plan of the company, but we are not told why. There was no evidence that Mattison entered into such an agreement and if he had done so the stock option would only have been additional compensation for his services and no part of the consideration paid for the stock. Moreover, the advent of Mattison as a stockholder was the occasion of the departure of Kendall and Nathason and the termination of their interest in the company. They received nothing whatever from Mattison prior to the closing of the escrow.

Other contentions of appellant will not be passed upon.

The entire transaction was conditioned upon approval by the commissioner, the permission was given and the sale was legally made.

The judgment is reversed with instructions to make new findings and conclusions and enter judgment in accordance with the views herein expressed.

Ford, J., and Kaus, J., concurred.

A petition for a rehearing was denied March 2, 1966, and respondent's petition for a hearing by the Supreme Court was denied March 30, 1966.