**L. S. ROBINSON, Plaintiff,**

**v.**

**CUPPLES CONTAINER CO., a corporation, and Cupples Manufacturing Co., a corporation, Defendants.**

**No. C 69 14.**

United States District Court,
N. D. California.

Sept. 14, 1970.

---

Anthony P. Brown, of Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiff.

Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., and Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This action arises under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78jj, Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. 240.10b–5, and the provisions of the California Corporations Code.

Jurisdiction in this court is founded upon Title 15 U.S.C. § 78aa which provides that the district courts shall have exclusive jurisdiction of violations of the Securities Exchange Act.[1]

Plaintiff is a citizen of the State of California; defendants are citizens of states other than California and have their principal places of business in the State of Missouri. It is alleged that defendant Cupples Company Manufac-

---

1. On this point see the April 23, 1970 Memorandum of Decision of this court dealing with the challenge by defendants to jurisdiction and venue.

turers (Manufacturers) own the majority of the outstanding stock in defendant Cupples Container Corporation (Container).

The action is now before this court on motions by each defendant to dismiss on the ground that each count of the Second Amended Complaint fails to state a claim upon which relief can be granted. Federal Rules of Civil Procedure 12(b).

In the first count of the Second Amendment Complaint it is alleged that on March 24, 1967, plaintiff and defendant Container entered into a contract whereby Container agreed to sell 21,307 shares of Container common stock to plaintiff in consideration of the sale by plaintiff to Container of 785 shares of common stock of the "Magi-Cup Corp.", a California corporation; that the 785 shares of Magi-Cup represented the majority of the outstanding stock of that corporation and had a fair market value of $210,000.

It is alleged that defendants, in connection with negotiations leading to the execution of that contract, represented that plaintiff would be elevated to the management position of Container's cup operation, that plaintiff would be given management responsibility in order that he might protect his investment, and that defendants would provide capital to increase the ability of Magi-Cup to maintain national marketing.

It is further alleged that these representations were untrue in that defendants had no such intent as evidenced by the fact that plaintiff was never given the promised management responsibilities in Container and, in November, 1967, plaintiff was relieved of all management responsibility, even in Magi-Cup; that plaintiff knew he could protect his investment if he was given such responsibility; that plaintiff relied upon the false representations and was induced thereby to sell his Magi-Cup stock; and that plaintiff would not have entered into the contract but for the false representations.

Finally, it is alleged that as a direct and proximate result of such false representations plaintiff has been denied the opportunity to protect his investment and the stock received in the exchange has become substantially worthless.

In Count Two it is alleged that Container offered to sell, attempted to sell, and solicited the sale of stock in California; that the sale was made without a permit authorizing the transaction from the California Commissioner of Corporations and that the sale is therefore void.

## MOTION TO DISMISS COUNT ONE

Defendants contend that Count One fails to state a claim against defendants upon which relief can be granted because no damage is alleged to have resulted from the alleged misrepresentations; that Count One fails to allege a causal connection between the alleged misrepresentations and the alleged damage; that Count One seeks recovery for an alleged breach of fiduciary duty by management and controlling shareholders and that such recovery is not possible under the Securities Exchange Act of 1934.

Count One of the Complaint is based essentially upon Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. 240.10b–5 [2] in that it alleges a

---

**2.** Rule 10b–5 provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means of interstate commerce, or of the mails or of any facility of any national security exchange,
  (a) To employ any device, scheme, or artifice to defraud,
  (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, or
  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

misrepresentation of material fact in connection with the purchase of securities.

Defendants argue that in order to state a claim under Rule 10b–5 a complaint must contain, *inter alia*, (a) an act or acts allegedly violative of Rule 10b–5 performed in connection with a transfer of stock, (b) an injury to the plaintiff, and (c) a causal nexus between the act or acts allegedly violative of the Rule and the injury to plaintiff. Bound Brook Water Co. v. Jaffe, 284 F.Supp. 702, 709 (D.N.J.1968); List v. Fashion Park, 340 F.2d 457, 462 (2d Cir. 1965); Barnett v. Anaconda, 238 F.Supp. 766, 770, 775 (S.D.N.Y.1965); Smith v. Murchison, 310 F.Supp. 1079 (S.D.N.Y.1970).

Defendants say that the complaint in this action fails to adequately allege either injury to plaintiff or causal nexus between the alleged violation and the alleged injury.

In each of the above cited cases the courts found, either after a full trial or from the face of the complaint, that there was an insufficient connection between the alleged 10b–5 violation and the injury claimed.

In *Bound Brook, supra,* the court noted that the complaint failed to adequately specify either the alleged damage to plaintiffs or the causal nexus between the allegedly violative acts and the alleged damage.

In List v. Fashion Park, *supra,* involving a failure of disclosure by a corporate insider prior to purchase of minority shares, the court found, after a full trial, that the conduct of defendant did not actually cause plaintiff's injury because plaintiff would not have been influenced by the undisclosed facts and because the disclosed facts were not material at the time of the sale.

In Barnett v. Anaconda, *supra,* involving the use of misleading proxy statements to effect the dissolution of a corporation, the court found no causal connection between the alleged violation of the Securities Exchange Act and injury to plaintiff because the defendants owned sufficient shares to have affected the dissolution without plaintiff's approval.

In Smith v. Murchison, *supra,* the court stated that "In order to state a claim under Rule 10b–5, however, it must appear not only that a purchase or sale took place, but that there was a loss and that the loss flowed directly from the purchase or sale."

It becomes apparent from a study of the above cited authorities that the courts are taking great care to insure that cases brought under Rule 10b–5 are, in fact, based on violations of federal law; i. e., that the conduct of the defendant which is alleged to be in violation of the Rule actually caused plaintiff's injury.

The problem in the instant case appears to have arisen out of the confusion surrounding the treatment of "causal nexus" in the various cases.

A great deal of this confusion is cleared away by the recent case of Chasins v. Smith, Barney & Co., Inc., 305 F.Supp. 489 (S.D.N.Y.1969); aff'd (2d Cir. July 7, 1970), 39 Law Week 2037.[3]

In *Chasins,* a case involving non-disclosure by a broker-dealer of his position as market-maker to a purchaser of stock at the time of sale, the court held that the question is not whether the defendant sold to plaintiff at a fair price but whether disclosure of defendant's position as market-maker might have influenced plaintiff's decision to buy the stock.

3. It is interesting to note that *Chasins* is a decision by the Second Circuit Court of Appeals, the same circuit which is responsible for the List v. Fashion Park decision; and that the Barnett v. Anaconda and Smith v. Murchison cases are decisions of a District Court within the Second Circuit.

The court in *Chasins* found that the position of market-maker was a material fact that should have been disclosed; that plaintiff relied upon defendant's recommendations without disclosure of the material fact; that plaintiff purchased the securities and suffered a loss on resale; and that "Causation in fact or adequate reliance was sufficiently shown by *Chasins.*" 39 L.W. 2038.

The court went on to discuss damages finding that, since defendant violated Rule 10b–5 with respect to the sale of securities, the plaintiff was entitled to recover his damages resulting from such violation; "The issue is not whether Smith, Barney was actually manipulating the price on *Chasins* or whether he paid a fair price, but rather the possible effect of disclosure * * * on *Chasins'* decision to purchase * * *." 39 L.W. 2038.

*Chasins* was awarded damages equalling the difference between the purchase price of the shares and the price at which he sold them a year later; the court did not require that the loss be proximately caused by the defendant's violation of the Rule, as defendants would have this court require, but rather the court required that defendant be shown to have engaged in activity in violation of the Rule, that plaintiff be shown to have relied upon such violation and that loss ultimately result therefrom.

■ Therefore, it is clear that the "causation" required is simply that the action on defendant's part, which is alleged to have violated Rule 10b–5, must have been relied upon by plaintiff when he entered the transaction. Chasins v. Smith, Barney, *supra;* List v. Fashion Park, *supra* 340 F.2d at 462.

■ It is our opinion that the allegations in the instant complaint, which are generally to the effect that defendants made untrue statements concerning their intent to deny plaintiff the promised management responsibility, are sufficient to allege a misrepresentation of a material fact.

Promised management responsibility is, in the context of the allegations of this complaint, a material fact and any untrue statement concerning such promised responsibility may well constitute a violation of Rule 10b–5. It may be assumed at this stage of the action that, if defendants had indicated to plaintiff that he would not be given management responsibility in the Container cup operation, the plaintiff would not have entered into the transaction.

We recognize that it must also be established that plaintiff relied upon such untrue statement in deciding to enter the transaction, List v. Fashion Park, *supra* at 462; of course, this is a question of fact which cannot be resolved on a motion to dismiss.

It is sufficient to note that the complaint herein alleges that plaintiff relied upon defendants' alleged false representations. and that plaintiff was induced thereby to enter the transaction.

Once the "causation" is established the plaintiff is entitled to whatever damage resulted; in *Chasins* the damage was stated to be the difference between the purchase price of the stock and its resale value, in the instant case plaintiff has alleged that he gave up stock worth $210,000 and that the stock he received is now worthless.

We believe that the "causation in fact" required in Rule 10b–5 cases has been sufficiently alleged in this action to allow the complaint to withstand a motion to dismiss.

Accordingly, it is the order of this court that defendants' motion to dismiss insofar as it attacks the first count of the Second Amended Complaint should be, and the same is hereby, denied.

## MOTION TO DISMISS COUNT TWO

In support of the motion to dismiss, as it applied to Count Two of the Second Amended Complaint, defendants allege that a permit from the California Corporations Commissioner is only required when a sale of securities occurs in Cali-

fornia, that the sale in question occurred in Missouri and that it is therefore valid.

The California Securities Law, in effect at the time the acts complained of occurred, provided: [4]

> " § 26100 *Issuance or sale of securities without a permit or in non-conformity to permit void.* Every security of its own issue sold or issued by any company without a permit of the commissioner then in effect authorizing the issuance or sale of the security is void."

Defendants do not dispute the allegation that a permit from the commissioner was not obtained in this transaction; the allegation is, therefore, deemed admitted for purposes of this motion.

Plaintiff points out that "sale" is defined in § 25009 which provides:

> " 'Sale' (a) 'Sale' or 'sell' includes every disposition, or attempt to dispose, of a security * * * for value. 'Sale' or 'sell' includes all of the following, whether done directly or by an agent, circular letter, advertisement, or otherwise: An offer to sell; an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale; * * * an exchange * * *."

Plaintiff contends, therefore, that since defendants entered into negotiations for the sale of Container stock in California without a permit from the commissioner the entire transaction is void.

In the present case it is undisputed that, although negotiations leading to the contract occurred in California, the contract itself was performed and executed and the securities were transferred in Clayton, Missouri.

Prior to 1947, California case law clearly supported the defendants' position. In Robbins v. Pacific Eastern Corp., 8 Cal.2d 241, 65 P.2d 42 (1937), in a case somewhat similar to that presented herein (although *Robbins* in-

volved a far more complex litigation) the California Supreme Court held that:

> "At most, interpreting the transaction most favorably to appellants, we have a situation where a foreign corporation makes, in California, an offer to sell its stock, delivery and passage of title to take place in a state reasonably connected with the transaction * * * this offer we will assume was accepted in California. The validity of the stock when so issued * * * was not affected even if the prior contract to sell it was illegal.

> "[E]ven if it be assumed that the Corporate Securities Act did apply to the negotiations had in this state, and even if it be assumed that the executory contract * * * was illegal, nevertheless, the performance and execution of the contract in New York, being legal there, and being complete in themselves, stand independently of the prior illegality." *Robbins, supra* at 277, 65 P.2d at 60–61.

Again in B.C. Turf & Country Club v. Daugherty, 94 Cal.App.2d 320, 210 P.2d 760 (1949), it was held that " * * even though the negotiations had in California violated the California statute * * * the securities issued and delivered in the foreign state to California stockholders are valid securities. * * * The commissioner concedes that this is the law." *B.C. Turf, supra* at 328, 210 P.2d at 765.

Plaintiff does not dispute that under the authority of *Robbins* the sale in question, occurring in Missouri, would be valid; however, it is plaintiff's contention that these cases dealt with California securities law as it existed prior to 1947 and that the 1947 amendment to section 26100 overruled the *Robbins* and *B.C. Turf* cases.

Prior to 1947 the voiding section of the California securities law provided that "every security issued by any company without a permit" shall be void.

---

4. California Corporations Code, § 26100 was repealed as of January 2, 1969, the date the Corporate Security Law of 1968 went into effect.

In 1947 this section was amended to provide, in section 26100, that every security "sold or issued" without a permit is void.

Plaintiff contends that the addition of the words "sold or" to the wording of the section makes illegal and void any securities "sold or issued" without a permit; "sale" including any offer, attempt to sell or solicitation to sell within California.

Defendants contend that this amendment came about as a result of an article by T. W. Dahlquist, "Regulation and Civil Liability Under the California Securities Act: II," 34 Calif.L.Rev. 344 (1946), in which it was pointed out that the law in existence in 1946 would not require that a permit be obtained by a corporation prior to the sale of treasury shares, although a permit would be required before a corporation could issue new shares; that the amendment was not directed at the holding in *Robbins*, a case decided ten years prior to the amendment; and that *Robbins* is still the law.

Plaintiff has been unable to cite any case authority which holds, either expressly or implicitly, that the amendment overrules *Robbins,* and, in fact, the authority relied upon by plaintiff would appear to support the continuing validity of *Robbins.*

In Ogier v. Pacific Oil & Gas Development Corp., 135 Cal.App.2d 776, 288 P.2d 101 (1955), relied upon by plaintiff, which dealt with the 1947 law, it was held that solicitation without a permit, illegal under the statute, infected the entire transaction with illegality and that the " * * * illegality was not cured by the subsequent issuance of a permit, there being no 'intervening circumstances such as the making of a new agreement between the parties after issuance of the permit * * *.' "

*Ogier* is clearly distinguishable from *Robbins* on several points, not the least of which is the fact that *Ogier* involved a wholly intrastate transaction.

The court in *Ogier* itself apparently considered *Robbins* to be binding authority when it distinguished the two factual situations by finding that " * * the essential parts of the transaction there involved occurred outside and beyond the jurisdiction of this state whereas here we have an intrastate transaction." *Ogier, supra* at 781, 288 P.2d at 105.

The sum and substance of the above discussion is that in California the place of performance of an executory contract for the sale of securities is all important and that *Robbins* is still the law. This conclusion is also reached by Professor Louis Loss following his discussion of the California securities laws in his article "The Conflict of Laws and The Blue Sky Laws," 71 Harvard L.Rev. 209, 231 (1957).

In the instant case it is apparent from the agreement itself (see the copy of the agreement attached to defendants' original motions to dismiss) and from the affidavit of Allan Barton, Secretary-Treasurer of Container (attached to the original motions) that the contract was executed in Missouri and the exchange of stock took place there.

Therefore, under the holding of *Robbins,* regardless of the illegality of prior negotiations in California, the contract itself, having been performed and executed in a state in which it was legal, stands on independent ground and is not made illegal under California law.

Accordingly, it is the order of this court that defendants' motions to dismiss, insofar as they attack the second count of the complaint, should be, and the same hereby are, granted.